INDEPENDENT SCHOOL DISTRICT OF PERRY, IOWA, Appellee, v. M. M. HALL, et al., Appellees. CEDAR RAPIDS NATIONAL BANK, Intervener-Appellant.

**Schools:** BUILDING CONTRACTS: CLAIMS OF SUBCONTRACTORS: ENFORCE-
1 MENT. Subcontractors have no lien for material furnished for the construction of a public building, either upon the building itself or upon the funds in the hands of the corporation due the principal contractor. Their only redress is against the funds in the hands of the corporation, and to preserve any preference right thereto they must file their claims with the proper officer of the corporation within thirty days, as provided by the statute; by filing their claims after the expiration of the thirty days they stand in no better situation than the general creditors of the contractor.

**Same:** SETTLEMENT OF CLAIMS: ACTION BY CORPORATION. The bring-
2 ing of an action by a corporation to settle and adjudicate the claims of subcontractors and others claiming the funds in its hands due the

principal contractor for the construction of a public building, does not give the subcontractors or an assignee of the funds any right as between themselves which they would not otherwise have had.

**Same:** PRIORITY OF CLAIMS: RIGHTS OF ASSIGNEE. The provision in a building contract between the corporation and the principal contractor, simply authorizing the corporation to retain sufficient funds to meet any liens or claims, which, if established, the owner of the premises would be liable for and the contractor chargeable with, will not give subcontractors failing to file their claims within the statutory time any preference right to funds still due the contractor, as against his assignee of the fund.

**Same:** ASSIGNMENT OF FUNDS: RIGHTS OF ASSIGNEE. An assignment of funds due the contractor for the construction of a public building, and remaining in the hands of the corporation, carried with it the right of the assignee to receive the same, as against subcontractors who failed to file their claims with the corporation within the statutory time.

*Appeal from Dallas District Court.*—HON. J. H. APPLEGATE, Judge.

TUESDAY, APRIL 8, 1913.

ACTION by subcontractors to establish claims for material furnished in the erection of a certain school building under the provisions of section 3102. Cedar Rapids National Bank, Intervener, claiming under an assignment from the principal contractor. Decree and judgment for subcontractors. Intervener bank appeals.—*Reversed.*

*Redmond & Stewart,* for appellant.

*E. J. Kelly, Deacon, Good, Sargent & Spangler* and *Heald & Lockwood,* for appellees.

GAYNOR, J.—Plaintiff is an independent school district organized under the laws of this state. On October 21, 1909, plaintiff entered into a written contract with defendant Hall

to construct for it a high school building at the agreed price of approximately $25,838. The exact amount is not material under the issues in this case. Hall began the construction of said building under said contract, and completed it in February, 1911. The plaintiff district paid to or for Hall during the construction thereof certain sums of money to be applied on the contract, and the same was paid in accordance with the terms of the contract. At the time this action was commenced there was a balance due Hall on the contract of $4,965, and there were at that time certain subcontractors holding claims, unpaid, for material furnished to Hall for and used in the construction of said building, all of whom are made parties defendant herein with the said Hall, and each of whom claim a lien on the funds in the hands of the district to the amount of his claim. On the 10th day of May, 1911, plaintiff brought this action under and by virtue of section 3103 of the Code, alleging in its petition that the building had been completed; that there is a balance due Hall in the hands of the district of $4,965; that there are certain claims for material furnished by subcontractors that remain unpaid, and asking that the amount, priority, mode, and time of payment of the said claims, to the extent of the balance due Hall under the contract, be by the court adjudicated and determined, and tendering into court the said balance of $4,965.

In the action so brought by the plaintiff, all the parties hereinafter mentioned appeared and filed answers or cross-petitions setting out therein their respective claims, the amount thereof, and claiming a lien on the funds in the hands of the district belonging to Hall. On the 9th day of November, 1911, and while this cause was pending and undetermined, the Cedar Rapids National Bank filed its petition of intervention, claiming the funds in the hands of the district under and by virtue of an assignment thereof made by Hall to it for money advanced to be used in the construction of said building, and asking that intervener have judgment against Hall for the amount of its claim, and that its claim be judged superior

and paramount to the claims of each and all of the defendants and other cross-petitions in and to the funds in the hands of the district.

Upon the issues thus tendered, the cause was tried to the court and a judgment and decree entered by the court, which so far as is material to this controversy is as follows:

(1) The court finds that in the following named cases claims were filed, duly verified, with the secretary of the plaintiff district, and also with the treasurer of the said district, within thirty days from the date of the last item of their respective accounts, and that the defendants named hereinafter are each entitled to have their claims paid out of the funds tendered into the court in the following amounts, to wit:

McColl Lumber Company ........................$  579.42
Jones Electric Company .........................    117.15
T. J. Gilbert ...................................     14.38
S. Hanson Lumber Company ....................    202.09
F. Van Sittert Company .......................    177.68
Jewett Lumber Company ......................    346.89
National Wood Works .........................     18.87
Cedar Rapids Door & Sash Co...................  2,541.28
                                                ─────────
    Making a total of ......................$3,997.86

(2) The court further finds that each of the following defendants are entitled to a judgment against the defendant M. M. Hall in the following amounts set opposite their names, to wit:

Henry Miller ..................................$   25.83
Spahn Rose Lumber Company ...................    114.84
Hydraulic Pressed Brick Co.....................    287.00
Cardiff Gypsum Plaster Company ................     59.84
Kint Lumber & Coal Co..........................    791.01
City of Perry ..................................     25.00
George T. Gadd Hardware Co....................    323.78
E. K. Larimer Hardware Co......................     54.42
                                                ─────────
    Making a total of ......................$1,681.72

And that said defendants last above named filed their claims, duly verified, with the secretary and treasurer of the

plaintiff district, but not within thirty days from the last item on their respective accounts; but they are each entitled as against the Cedar Rapids National Bank of Cedar Rapids, intervener, to participate *pro rata* according to their respective shares, in the fund which shall remain after paying in full the claims hereinbefore mentioned, and the amount, so received by each of these named defendants, shall be credited upon the judgments that they hereby obtain against M. M. Hall, and the court finds that Cedar Rapids National Bank of Cedar Rapids is not entitled to participate in the funds tendered into court by plaintiff until after the payment in full of all claims hereinbefore allowed, and the Cedar Rapids National Bank of Cedar Rapids is hereby given a judgment against M. M. Hall in the sum of $4,683.41, at 7 per cent and for attorney's fees at $156.37, at 6 per cent.

From the judgment so entered, the intervener the Cedar Rapids National Bank alone appeals.

No question is made as to the right of those claimants, above named, who filed their claims within the time prescribed by section 3102 of the Code. The only controversy presented by and argued on this appeal is that between the intervener, Cedar Rapids National Bank, and those subcontractors who did not file their claims with the district within thirty days from the furnishing of the last of the material.

The question for our determination, therefore, is, Which of these parties, under the law, has the right to be first paid out of the fund in the hands of the district? It becomes important therefore to inquire into and determine:

I. What the rights of these subcontractors were at the time in and to the funds in controversy.

1. SCHOOLS: building contracts: claims of subcontractors: enforcement.
Whatever rights they had must rest on and be found in section 3102 of the Code, which reads as follows:

Every person, who as subcontractor, shall furnish materials for the construction of any public building, or other improvement, shall have a claim against the public corporation constructing such building or improvements, for the

value of such material, not in excess of the contract price therefor, and such corporation shall not be required to pay any such claim before or in any different manner from that provided under the principal contract. Such claim shall be made by filing with the public officer, through whom the payment is to be made, an itemized, sworn statement of the demand, within thirty days after the performance of the last labor or the furnishing of the last material, and such claims shall have priority in the order in which they are filed.

The question here presented has been several times before this court, and this court has construed this statute, and it has been said that the general law and the provisions of the statute, giving a lien to mechanics and materialmen, has no application under this statute; that there is no provision in this statute for a lien and no duty or obligation rests on the part of the corporation to protect the interests of a subcontractor, nor does the subcontractor, under this statute, have any right to participate in the funds, until the claim is filed in strict accordance with the requirements of the statute, and the corporation can be made liable in no other way than by the filing of the claim with its proper officer within the time limited in the statute, and then only to the extent that the payments provided in the contract remain unpaid. The filing of the claim after thirty days does not create a lien upon the building in favor of the laborer or materialman, or upon the fund due the principal contractor for erecting the building. That is, the fact that material has been furnished for the construction of the building does not create under this statute a lien upon the building, or the fund due the principal contractor for the erection of the building.

In *Whitehouse v. American Surety Co.,* 117 Iowa, 328, it was said:

Does the statute (being the statute in question) create a lien upon the funds of the principal contractor? No lien is created on the building or improvement. Indeed, it is doubtful if one could be created thereon. The lien, if any,

must be upon the fund in the hands of the corporation. But the statute does not say that it is a lien. It says that the laborer shall have a claim against the corporation for the value of his services, and that such claims shall have priority in the order in which they are filed. This to our minds simply gives labor claimants a preference, and does not in any sense create a lien. Affirmative action on the part of the claimants is needed to secure this preference, and failure to take this action defeats the claim. Statutes providing merely for preference do not create liens. At most, the laborer has an equitable right or remedy as distinguished from a lien, and that without some action on his part no lien is created. This action he is not compelled to take, and, until taken and an order secured, he has no lien upon, or right to, the funds in the hands of the corporation.

From this decision it is evident that, to entitle these subcontractors to participate in or be paid out of this fund, some affirmative action must be taken on their part, and the affirmative action required is that provided for in the statute itself. To acquire any right to the fund in the hands of the corporation, it was necessary that the provisions of this statute should be strictly followed, and that an itemized sworn statement of the labor performed or material furnished, be filed with the public officer, through whom payment is to be made, within thirty days after the furnishing of the last of the material for which claim is made.

In the case of *McGillivray Bros. v. Township of Barton,* 96 Iowa, 629, this court said, discussing the statute in question:

It was, by requiring claimants to present their demands under the sanctity of an oath, to thus insure the correctness of the demands and to prevent the making of illegal and improper demands upon the corporation. The rights of the claimants can be had only upon the full compliance with the requirements of the statute, and it is no hardship to insist that claimants for public funds shall comply with the statutory provisions enacted for the protection of the public and its officers in the discharge of its duties. We have held that,

if such a claim be not filed within the time fixed by the statute, the remedy provided for by the statute is not available to the claimants. This right is given by statute, and the party to be benefited thereby must clearly bring himself within the provisions of the statute. The liability of the defendants to pay must be determined, so far as the statement was concerned, by what was filed within thirty days after the last item of material was furnished. No subsequently filed claim could avail the plaintiffs, and it is equally clear that, if insufficient statement was filed within the thirty days, no amendment thereto, after the expiration of thirty days, could make it good and binding upon the district.

In the *Empire State Security Co. v. City of Des Moines,* found in 152 Iowa, 547, in speaking of this statute, this court said:

It merely provides a method by which the subcontractor or materialman may acquire a right to be. paid by the public corporation out of such portion of the contract price as has not been paid to the contractor in accordance with the terms of the contract. The public corporation is under no obligation to protect the subcontractor or materialman in such case until such statement as is required by the statute is filed within the time specified, and as the filing in this case was more than thirty days after the furnishing of the last of the material, for which claim is made in such statement, no obligation to the person so filing has ever arisen on the part of the city.

From the foregoing, it is apparent that the filing of these claims with the district after thirty days created no right on the part of the claimants to the fund in the hands of the district now in controversy. Having failed to avail themselves of this provision of the statute made for their benefit, they thereby waived all rights which they otherwise might have had to this fund. Having failed to file their claims within the time, and in the manner prescribed in the statute, they acquired no right as against the district, and no right to the fund in the hands of the district belonging to Hall. They stood then simply as general creditors of Hall, insisting upon

recognition and rights under a statute which gave them no rights against the district, or to the funds in the hands of the district, because of their failure to avail themselves of its provision, and to do that which, under the law, entitled them to the recognition asked.

II.  We proceed now to determine whether or not the bringing of this action by the plaintiff district, making these parties defendants, and their appearance in that action, setting up their claims, gave them any other or different rights to the fund in question than they otherwise would have had as against the intervener, the Cedar Rapids National Bank.  This action was commenced under section 3103 of the Code, which provides: "Any party interested may cause an adjudication of the amount, priority, mode and time of payment of such claims, by an equitable action in the district court of the proper county.  In such action the court may assess a reasonable attorney's fee against the party filing in favor of such corporation."  This section provides a means by which any party interested may procure an adjudication of the rights of parties claiming under section 3102 of the fund therein referred to.  The bringing of an action under this section is not an admission of any right to or in the fund on the part of the principal contractor or subcontractors, and the bringing of the action adds nothing to the right of such claimants against the district, or to the fund in the hands of the district, and in this case the bringing of this action by the plaintiff placed the parties to the action in no better position to insist upon a right to participate in the funds than they would have, had no action been brought, and no better right to the fund in the hands of the district than they would have had had they been pressing their claims on their own motion against the district.

2. SAME: settlement of claims: action by corporation.

III.  It is insisted, however, that by reason of the provisions in the contract between the district and the principal

contractor, Hall, under which the building was constructed,

3. SAME: prior-
ity of claims:
rights of as-
signee.

these defendants are entitled to be paid out of the fund in controversy to the exclusion of the intervener bank. The provision of the contract relied on is as follows:

If at any time there shall be evidence of any lien or claim, for which, if established, the owner of the premises might become liable, and which is chargeable to the contractor, the owner shall have the right to retain out of any payments then due, or thereafter to become due, an amount sufficient to completely indemnify it against such lien or claim. Should there prove to be any such claim after all payments are made, the contractors shall refund to the owner all moneys that the latter may be compelled to pay in discharge of any lien on such premises made obligatory in consequence of the contractor's default.

These defendants, relying upon this provision of the contract, claim a right to the fund in controversy, and in support of their claim cite the case of *School District v. Mardis,* found in 106 Iowa, 295. This claim, however, is not well taken, for the reason that in the instant case the district does not undertake to pay for labor or material furnished by subcontractors, where the claims remain unpaid, nor does it reserve the right to withhold payment from the original contractor until such claims are settled or released. In the contract in the *Mardis* case it was stipulated and agreed between the district and the principal contractor that upon notice of the existence of any claim for mechanic's liens for labor or material furnished by subcontractors, or in case any such labor or material remained unpaid for by the principal contractor, the district should have the right to withhold payment from the principal contractor until such liens, claims, or demands were settled or released. This was a right reserved by the district and consented to by the principal contractor for the benefit of laborers and materialmen, who had furnished labor or material, which went into the construction of the building. This

was a contract that these parties had a right to make, and it was a contract that the parties, for whose benefit it was made, might avail themselves of. In the *Mardis case* the facts are very like the facts in this case. The defendants were subcontractors who had not established their claims as required by section 3102. The People's Savings Bank claimed under an assignment. The court held against the claim of the assignee and in favor of the subcontractors. The court in commenting on the contract in that case said:

Unless the district had a right to withhold the funds until the subcontractors were paid, such funds should be turned over to the Peoples Savings Bank and the Gilcrests under the order and the assignment. . . . It is conceded the district could provide in its agreement for the payment of all debts for material and labor before the 15 per centum of the price should be available, and we think this is the evident purport of the contract. In unmistakable terms the district reserves the right to withold payment in case labor or materials remain unpaid for. In other words, the district is not required to pay Mardis until he has paid for the labor and material used in construction, which furnished the basis of compensation. Satisfaction of these is made a condition precedent to recovery by him if the district so elects. Through their order and assignment the appellant acquired only such interest in the fund as Mardis had; and, as he could not enforce payment before the settlement or release of the indebtedness for materials and labor, these assignees could not. By bringing the action the plaintiff waived this election to withhold the funds, on condition that it be applied *pro rata* in satisfaction of the debts protected by the contract. The clear implication is that defendant may thus insist upon the application of the fund, for this could be its only interest in withholding it, and the court says that the only condition in the bond upon which the right to withhold the money from the principal contractor is that the claims be for labor and material furnished, and that 'they remain unpaid for by the principal contractor.

So it was held in this case that the contract relied upon in the *Mardis* case was made both for the benefit of the sub-

contractors and for the district, and the district had a right, as against the principal contractor and against his assignees, to withhold sufficient of the funds covered by the contract to pay for material furnished and labor done which remain unpaid and to apply the same in satisfaction of such claims.

The provision of the bond in this suit is materially different, and was apparently made for the protection of the district against claims for material and labor furnished which were not paid for by the principal contractor. The provision of the bond so far as material to this controversy is that if at any time there shall be evidence of any claim chargeable to the principal contractor, for which, if established, the district might become liable, the district shall have a right to retain out of any payment then due, or thereafter to become due, an amount sufficient to completely indemnify it against such liens or claims. There is nothing in this contract authorizing the district to withhold from the principal contractor any of the funds arising out of the contract, except for the payment of claims for material and labor furnished in the construction of the building, for which the district might become liable. The only right given by this contract to the district was to retain sufficient funds for the payment of claims for which it might become liable, and to indemnify the district against such claims. We find that the district in no way became liable for the claims of the subcontractors in controversy in this suit, and the district at the time this action was commenced was not liable to such subcontractors, for the reason that they had not complied with the requirements of the statute giving them a right or claim against the district, or to the funds in the hands of the district. The district, therefore, had no right as against the principal contractor to withhold this fund in its hands, except as to such subcontractors as had complied with the statute, and secured a right against the district, to be paid out of the fund in the hands of the district. The subcontractors, whose claims are drawn in question in this suit, have no lien or claim against the district, or the fund in the

hands of the district, and no right to pursue the district on their claims; therefore they were not protected by the provisions of this contract. They were simply the general creditors of Hall, the principal contractor, with only such rights as the general law gives them for the enforcement of their claims against him. We hold, therefore, that neither under the statute nor under the provisions of the contract hereinbefore referred to had these subcontractors any right or claim against the district, or the funds in the hands of the district at the time this action was commenced, except such as general creditors had to the fund belonging to Hall.

IV. We proceed now to determine the *status* of the intervener bank at the time this action was commenced. It appears that along in the spring of 1910 Hall made some

4. SAME: assignment of funds: rights of assignee.

arrangement with the bank, by which the bank was to furnish money for the payment of labor and material that entered into the construction of this building; that, to secure them for the repayment of any sums so furnished, he verbally assigned to the intervener all claims which he had against the plaintiff district for the erection of said building; that subsequently Hall made a written assignment to the bank of such funds. The exact date on which the same was made does not appear, although the assignment is dated April 13, 1910. This assignment carried with it as against Hall and the district, and as against all persons who had not acquired some lien or interest in the fund in the hands of the district, a right to demand and receive the same from the district. It is claimed by appellees that the amount due the bank from Hall, to secure which the assignment was made, has been paid, but this claim we do not find supported by the evidence. It is apparent that the money advanced by the bank to Hall was for the purpose of enabling him to pay for labor and material furnished in the construction of this building, and it is also apparent that the assignment was to secure the bank for all advancements made by it to Hall for that purpose, and that

all advancements made by the bank to Hall after the making of the assignment was furnished to that end, and in reliance upon the assignment so made, and the court found on the trial that there was due from Hall to the bank the sum of $4,683.41.

We hold therefore that the court erred in holding that the claims of the subcontractors:

| | |
|---|---:|
| Henry Miller .............................. | $    25 83 |
| Spahn Rose Lumber Company ................. | 114 84 |
| Hydraulic Pressed Brick Company ............ | 287 00 |
| Cardiff Gypsum Plaster Company .............. | 59 84 |
| Kint Lumber & Coal Company................. | 791 01 |
| City of Perry ............................... | 25 00 |
| George T. Gadd Hardware Company........... | 323 78 |
| E. K. Larimer Hardware Company.............. | 54 42 |

Making a total of........................ $1,681 72

—are each entitled, as against the Cedar Rapids National Bank, intervener, to participate *pro rata* according to their respective shares in the fund in the hands of the plaintiff district, and that the judgment should have been in favor of the intervener bank as against the above-named subcontractors for the amount so remaining in the hands of the bank, after paying the claims filed within thirty days, and the case is therefore *Reversed.*