MISSOURI GRAVEL COMPANY, Appellee, v. FEDERAL SURETY COMPANY, Appellant, et al., Appellees.

No. 40841.

JUNE 20, 1931.

REHEARING DENIED OCTOBER 5, 1931.

Hollingsworth & Hollingsworth, for appellant.

J. O. Boyd, for Missouri Gravel Company, appellee.

John Fletcher, Attorney-general, and Maxwell O'Brien, Assistant Attorney-general, for Iowa State Highway Commission, appellee.

Johnson & Martin, for Sinclair Refining Company, appellee.

Bertha L. Pflug, for Duncan-Schell Furniture Company, appellee.

Ralph B. Smith, for Streeter Lumber Company and A. Weber Company, appellees.

William Timberman, for F. W. Swan Lumber Company, appellee.

Hollingsworth & Hollingsworth, for Keokuk Sand Company, Ceco Steel & Wire Company, and Rock Island Cement Company, appellees.

Sawyer & Norman, for United Lead Company, appellee.

GRIMM, J.—On July 24, 1928, the Rock Island Cement Company, hereinafter called the "contractor," signed a contract for the construction of Primary Project No. 149 in Lee County, Iowa, with the State Highway Commission. The project consisted of the paving of a certain street in the City of Keokuk, Iowa, which constituted part of the primary road system of Lee County. The contract was let and the work done under the provisions of Section 4755-b26 of the Code of 1927, which in substance provides that the State Highway Commission is given plenary jurisdiction to hard-surface any road or street which is a continuation of the primary road system within any city or town.

Many of the facts are stipulated in the record.

The contractor, with the Federal Surety Company as surety, signed a contractor's bond which contained, among other things, a provision for the payment of all labor and material furnished in the work covered by the contract. During the progress of the work, the contractor failed and the construction was completed by the surety company. The work was accepted by the Iowa State Highway Commission on July 10, 1929, at which time there remained unpaid on the work the sum of $3,620.57. This was the portion of the contract price retained under the law.

Six material men filed proper claims with the Iowa State Highway Commission. Three of the said six claimants also filed original duplicates of their claims with the auditor of Lee County. On August 26, 1929, the Missouri Gravel Company, one of the claimants which filed its claim with the Iowa State Highway Commission and did not file its claim with the auditor of Lee County, filed its petition in the Lee County District Court, seeking to establish its claim. Notices were served upon all the other interested parties and they appeared and filed pleadings. The pleadings are quite voluminous. The material defenses may be stated as follows:

1. That the Iowa State Highway Commission was not the proper party with which to file the claims for improvements of this character, it being alleged that the Iowa State Highway Commission as such was not authorized by law to issue warrants for an improvement made under the provisions of Section 4755-b26 of the Code, and that the auditor of state was the party with whom, under the provisions of the statute, these claims should have been filed.

2. That the proper filing of the claim was a condition precedent to the consideration and allowance of the claim.

3. That the claimants having failed to properly file their claims within six months, they are barred under Section 10313 of the Code.

That the materials represented by the claims were furnished and that the claims are correct is not in dispute. The primary and controlling question in the case is with whom should these claims have been filed. The trial court approved of the filing of the claims with the Iowa State Highway Commission.

I. The determination of the key question in this case calls for an interpretation of Section 10305 of the Code of 1927, which reads as follows:

"Claims for material or labor. Any person, firm, or corporation who has, under a contract with the principal contractor or with subcontractors, performed labor, or furnished material, service, or transportation, in the construction of a public improvement, may file, with the *officer authorized by law to issue warrants in payment of such improvement,* an itemized, sworn,

written statement of the claim for such labor, or material, service, or transportation.'' (Writer's italics.)

As previously stated, this public improvement of the street in the City of Keokuk was made by virtue of the power and authority granted the Iowa State Highway Commission by Section 4755-b26 of the Code of 1927. The improvement was a part of the Primary Highway system. In the ordinary course of payment for work done on the primary highway, payments are made under the provision of Section 4755-b15, which reads as follows:

''Vouchers—payment. All claims shall be itemized upon voucher forms prepared for that purpose, sworn to by the claimants, certified to by the engineer in charge, and then forwarded to the state highway commission for audit and approval. Upon the approval, by the state highway commission, of vouchers which are payable from the primary road fund, such vouchers shall be forwarded to the *auditor of state,* who shall *draw warrants therefor,* and said warrants shall be paid by the treasurer of state from the primary road fund.'' (Writer's italics.)

In this case, the claims were not for payments in the regular course, but for materials and labor furnished and which are to be paid out of the retained portion of the contract price or by the sureties on the bond.

It is the contention of the claimants (appellees) that the state highway commission is authorized by law to issue warrants in payment of such improvements and that the filing of the claims with the state highway commission was a proper filing.

Lee County had voted primary road bonds, the proceeds of which were available for the payment of this project. Prior to the completion of the work, $22,611.49 was paid to the contractor or his assignee. This estimate was made out by the contractor, approved by the resident engineer and the district engineer of the state highway commission, and then filed with the Iowa State Highway Commission on November 1, 1928. The proper expenditure notations were made by the state highway commission, which was audited by the highway commission auditor and forwarded to the county auditor of Lee County, who, in turn, prepared a ''primary road bond fund warrant'' on the treasurer of

Lee County, which warrant was paid through a check drawn by the county treasurer on the Iowa State Bank of Fort Madison, Iowa. It was in this manner that the more than $22,000.00 estimate was paid. Why this was so done is not explained in the record. By the terms of Section 4755-b15, hereinbefore quoted, the voucher for the $22,000.00 estimate should have been forwarded to the auditor of state who, in turn, should have drawn a warrant payable by the state treasurer on the primary road fund. We do not overlook Section 4755-b14, which is as follows:

"Claims. All claims for improving and maintaining the primary road system shall be paid from the primary road fund provided, however, that when bonds have been issued for improving the primary roads, construction claims may be paid from such bond fund."

Nevertheless, we find no provision for paying the cost of primary road construction on contracts made by the state highway commission by warrants drawn by the county auditor.

Section 10306 of the Code of 1927 is as follows:

"Filing claims in case of highway improvements. In case of highway improvements by the county, claims shall be filed with the county auditor of the county letting the contract."

Under the foregoing, it clearly appears that had the contract in question been made by the county, the claims before us for consideration should have been filed with the county auditor, but we find no provision for the filing of the claims in controversy in this case with the county auditor of Lee County.

There is no claim that the original estimate, or any record thereof, was filed with the state auditor. Broadly stated, it is the position of the appellees that inasmuch as the contract is made by the state highway commission, all estimates thereon are approved by the state highway commission and all claims must first be approved by the highway commission before being paid, regardless of where filed, that the spirit of Section 10305 is that these claims should be filed with the Iowa State Highway Commission; or, stating it another way, it is their contention that inasmuch as no warrant is drawn by either the state auditor or the county auditor in cases of this kind until and after the highway commission fully approves of the claim, that in truth and in

fact the authorization of the payment of the claim by the state highway commission constitutes issuing warrants in payment of such improvement, as contemplated by the statute.

The appellees contend that the word "warrant", as contained in section 10305, means auditing, approving or giving authority for the expenditure, while the appellant contends that the words "filed with the officer authorized by law to issue warrants in payment of such improvement" are to be taken according to their usual acceptation. That is to say, the word "warrant" means, in said statute, the piece of paper issued by the state auditor as authority for the state treasurer to pay.

In Jefferson County Farm Bureau v. Sherman, 208 Iowa 614, this court, in construing section 2926 of the Code providing what shall be contained in articles of incorporation of farm aid societies said, among other things:

"It is a familiar and well recognized rule that, when a statute is clear, plain, and unambiguous, there is no room for construction. Fry v. Fry, 125 Iowa 424. It is also a well recognized rule of construction that the legislative intention is to be deduced from the language used, and the language is to be construed according to its plain and ordinary meaning. Drazich v. Hollowell, 207 Iowa 427. * * * It is also a rule of general recognition that, when a statute gives a right and creates a liability which did not exist at common law, and at the same time points out a specific method by which the right can be asserted and the liability ascertained, that method must be strictly pursued, Cole v. City of Muscatine, 14 Iowa 296; Lease v. Vance, 28 Iowa 509; Conrad & Ewinger v. Starr, 50 Iowa 470."

Manifestly, the rights being asserted by the claimants in this case were not afforded at common law and both the right and the method of enforcing the same are purely statutory.

In Aetna Casualty & Surety Co. v. Kimball, 206 Iowa 1251, this court had under consideration Section 10313 of the Code of 1924, which is the same as Section 10313 of the Code of 1927, found in Chapter 452, pertaining to labor and material on public improvements. In that case, this court said:

"Covering this entire legislative history, the policy of this court, as well as that of the general assembly, has been in the

direction of strict construction, as counter-distinguishing the liberality sought by appellant."

See also Independent School District v. Hall, 159 Iowa 607.

 In light of these pronouncements of this court, what interpretation shall be placed upon Section 10305, found in Chapter 452, relating to labor and materials on public improvements, having particular reference to the words "may file with the officer authorized by law to issue warrants in payment of such improvement?"·

In Chapter 241-B1 of the Code of 1927, pertaining to improvement of primary roads, we find Section 4755-b17 and Section 4755-b18, which read as follows:

· "b17. Contingent fund. The state treasurer is hereby directed to set aside from the primary road fund the sum of three hundred thousand dollars to be known as the primary road contingent fund.

"b18. Use of contingent fund. When claims for labor, freight, or other items which must be paid promptly and which are payable from the primary road fund or from the state highway commission maintenance fund, are presented to the said commission for payment, the said commission may direct that warrants in payment of said claims be drawn on said primary road contingent fund. Such warrants when so drawn and signed by the auditor of the state highway commission, shall be honored by the state treasurer for payment from said contingent fund."

These sections contain the only express provision by the legislature authorizing the drawing of warrants on any part of the primary road fund by the state highway commission, and, as will be noted, this power is confined strictly to the *contingent fund* which is a special fund created for a specific purpose. It is not contended that any of the claims in controversy in this case are to be paid out of the said contingent fund. A "warrant" which is *issued* or *drawn*, whichever term may be used, has, we think, a well-defined general meaning, commonly accepted in business affairs. The term as used in Section 4755-b18 quoted above, clearly appears to mean an ordinary check or written order, signed by the auditor of the state highway commission which, in case of the contingent fund, the statute provides, "shall

be honored by the state treasurer for payment from said contingent fund." In the ordinary use of the term a "warrant" is a written order, drawn by someone with authority, issued to some officer having the possession and control of funds, authorizing and directing the said officer, as, for instance, a treasurer, to pay out to the party named, the amount specified in said order, check or warrant.

Turning now to Section 10305, hereinbefore quoted, can it be said that the state highway commission or anyone connected therewith is included in the language "with the officer authorized by law to issue warrants in payment of such improvement," except in cases where the payment is to be made out of the contingent fund? Can it be said, as a matter of strict construction of section 10305, that because the engineers in charge of the work must first approve the estimate or the final payment, as the case may be, and the state highway commission must, in turn, approve of the same that, under the language of Section 10305, the state highway commission is the "officer authorized by law to issue warrants" in payment of the improvement?

It will be conceded, we think, that the legislature in its wisdom might well have provided that the claims should be filed with the State Highway Commission and likewise that the warrants might in all cases be drawn by the state highway commission, but the legislature did not do so. It may be noted that the Forty-fourth General Assembly (Chapter 209) has now amended Section 10305 by striking therefrom the words "authorized by law to issue warrants in payment of such improvement" and inserting in lieu thereof the words, "board or commission authorized by law to let contracts for such improvement."

Manifestly, this is not only a wholesome, but a very intelligent bit of legislation, because it enables all interested parties to readily determine where the claim shall be filed. All that needs to be done is to ascertain who, on behalf of the commonwealth, let the contract and all claims are to be filed with that person or organization.

Much of the argument on behalf of appellee, ingenious and persuasive as it is, might have very material weight under a different state of facts. Were we considering a statute containing ambiguous terms instead of the one under consideration, we might be led to the conclusion, for illustration, that inasmuch as

no payment is finally made without the approval of the state highway commission, therefore, the legislature intended that claims should be filed with them because it is the body which must necessarily give approval before the claim is paid and under such circumstances, possibly "warrant" might mean approval, but when the words in the statute under consideration are construed strictly as they must in this case be construed, there is no such ambiguity as calls for the reasoning urged by appellee. The "officer authorized by law to issue warrants in payment of such improvement" is plain, unambiguous language. There is in each instance an officer authorized by law to issue a warrant in payment of the improvement. If the improvement is to be paid out of the contingent fund the highway commission is that legal body. If the improvement is to be paid for out of the primary road fund, speaking generally, then the state auditor is the official whose duty it is to issue the warrant for the payment of the improvement.

In Fuller & Hiller Hdw. Co. v. Shannon, 205 Iowa 104, this court had for construction portions of Chapter 237, Acts of the Thirty-eighth General Assembly, pertaining to construction, improvement and maintenance of highways. The law at that time provided that "such claim shall be made by filing with the public officer *through whom the payment is to be made* an itemized sworn statement of the demand." Section 3102, Code, 1897. In that case, the contract was with the county. The controversy was between two subcontractors, one of which filed its claim with the Iowa State Highway Commission. The other filed its claim with the Iowa State Highway Commission, County Auditor of Lee County and the County Engineer of Lee County.

Section 6 contained this language:

"Vouchers therefor must be approved by the board of supervisors and forwarded to the highway commission for final audit, approval, and payment as provided in section thirteen (13) hereof."

Section 13 of the same chapter contained this language:

"All claims shall be itemized upon voucher forms prepared by the state highway commission, sworn to by the claimants, certified to by the engineers in charge, filed with and audited by

the board of supervisors, and then forwarded to the state highway commission for final audit and approval. Upon the final approval of vouchers which are payable from the county's allotment of the primary road fund, such vouchers shall be forwarded to the auditor of state; who shall draw warrant therefor, and said warrant shall be paid by the treasury of state from the primary road fund. Duly approved voucher claims, payable at the office of the county treasurer, shall be forwarded by the state highway commission to the county auditor, who shall issue warrant therefor, and the county treasurer shall pay the same with special assessment or road certificates, or from the proceeds thereof, or from the bond fund, as the case may be. Partial payments may be made on work during the progress thereof, but no such partial payment shall be deemed final acceptance of the work nor a waiver of any defect therein.''

This section provided for payment by warrants issued by the auditor of state or county auditor, depending upon the type of improvement. The contract was between the county and the contractor. The court said:

''It would appear, therefore, that 'the public officer through whom payment is to be made' is the county auditor. His warrants are paid by the county treasurer, and between them the account is kept.''

The provision that claims were to be filed with the public officers through whom payment was to be made was repealed and we now have in substitution therefor the language hereinbefore quoted, providing for the filing of claims ''with the officer authorized by law to issue warrants in payment of such improvement.''

By analogy, at least, the holding in the Fuller case is quite persuasive of an interpretation to be placed on the language under consideration in the case at bar. The final approval by the state highway commission was not considered controlling.

In light of the foregoing authorities and upon a careful consideration of all of the various provisions of the statute, we are constrained to hold that the claims in controversy in this case could only have properly been filed with the state auditor.

The surety in this case contracted and agreed to pay claims not satisfied out of the portion of the contract price which the

1332

public corporation is required to retain until completion of the public improvement, but the contract provides also "but the principal and securities shall not be liable to said persons, firms or corporations, unless the claims of said claimants against said portion of the contract price *shall have been established as provided by law.*" Establishing the claims as provided by law presupposes that the claim is filed in the proper place. The claims in the case at bar were not so filed.

It follows that the cause must be, and is, reversed.

Judgments against the principal contractor from which appeals were not taken are not to be disturbed by the foregoing opinion. The cause is remanded for a decree in accordance herewith.

FAVILLE, C. J., and ALBERT, MORLING, KINDIG, and WAGNER, JJ., concur.

EVANS and STEVENS, JJ., dissent.