HERCULES MANUFACTURING COMPANY, Appellee, v. U. C. BURCH et al., Defendants; MARYLAND CASUALTY COMPANY, Appellant.

No. 46485.

NOVEMBER 14, 1944.

REHEARING DENIED JANUARY 13, 1945.

Miller, Huebner & Miller, of Des Moines, for appellant.

J. A. Beard, of Mount Ayr, for plaintiff appellee.

G. H. Clark, Jr., Special Assistant Attorney General and Counsel for State Highway Commission, appellee.

Thoma & Thoma, of Fairfield, for Iowa State Bank and Trust Company of Fairfield, appellee.

Elton Johnston, of Corydon, for other appellees.

GARFIELD, J.—On May 3, 1940, U. C. Burch contracted in writing to do grading for the state highway commission on a secondary road in Wayne county. At that time Maryland Casualty Company became surety on the contractor's bond in the sum of $7,500. The contractor completed the work on September 7, 1940, and it was later accepted by the highway commission. On October 15, 1940, the Hercules Manufacturing Company filed its petition in equity against the highway commission, Burch, Maryland Casualty Company, Iowa State Bank and Trust Company of Fairfield—Burch's assignee—and several parties who had furnished labor or material on the project, alleging that it furnished material to Burch of the value of $351.14 for which it was entitled to a claim against the retained percentage of the contract price.

The highway commission asked leave to pay the balance of the contract price, $1,806.59, into court to be disbursed according to the rights of the parties. Maryland Casualty Company filed answer and cross-petition alleging the execution of the contract and bond, the approval and acceptance of the work by the highway commission, that cross-petitioner had paid several claims for labor and material furnished on the project, which claims had been assigned to it, and that under the provisions of chapter 452, Code of Iowa, it is subrogated to the rights of these claimants to the funds in the hands of the highway commission. Iowa State Bank and Trust Company of Fairfield alleged in its answer that it was entitled to the balance of the contract price under a written assignment from Burch, the contractor, made on August 3, 1940, filed with the highway commission three days later.

Upon the trial all facts were stipulated. It was agreed that: The contract, bond, and assignment to the Fairfield bank were executed as alleged; the work described in the contract was completed on September 7, 1940; the surety had paid claims for labor and material totaling $2,370.77 and taken assignments thereof; in August the highway commission estimated that work of the value of $8,219.20 had been completed; ten per cent of this amount, or $821.92, was retained by the commission, the balance of $7,397.28 was disbursed in two checks payable to Burch and the assignee bank; on November 2, 1940, the commission estimated the balance of the completed work was of the

value of $984.67, none of which had been disbursed; the assignment to the Fairfield bank was to secure a loan from it to Burch upon which there was due more than the sum retained by the highway commission.

Section 1109.06 of the specifications, part of the contract which in turn was incorporated in the bond, provides:

"If the work extends over a period of more than one month the Contractor will receive monthly estimates based on the amount of work completed in an acceptable manner, and on material delivered. * * * Ten per cent of each estimate shall be deducted and held as a suspended payment until final acceptance of the entire contract. * * * 90 per cent of the contract sum for each item shall become due upon final acceptance of that item by the Commission. The amount deducted from the contract sum shall be retained by the Commission as a suspended payment until final acceptance by the Commission of all of the items included in the contract."

The total contract price was $9,203.87. The highway commission was required by the contract to retain ten per cent of this amount, $920.39, until final acceptance of the work. It is conceded this ten per cent retention fund should be applied to the payment of claims and should go to the surety as assignee and subrogee of the claimants paid by it. The balance unpaid by the commission above the ten per cent, $886.20, is the amount in controversy. The lower court held that claimants for labor and material and the surety as their assignee and subrogee had no right to any part of the contract price except the ten per cent retention fund and awarded the amount in controversy to the bank. The surety has appealed. We think the trial court was right.

The rights of the claimants for labor and material and of appellant surety as their assignee and subrogee against the unpaid fund are determined by the statutes in chapter 452, Code 1939. Southern Surety Co. v. Jenner Bros., 212 Iowa 1027, 1036, 237 N. W. 500; Missouri Gravel Co. v. Federal Surety Co. 212 Iowa 1322, 1327, 237 N. W. 635; Independent Sch. Dist. v Hall, 159 Iowa 607, 611, 140 N. W. 855. All sections of th chapter should be considered in the light of their relation t

the whole. Ahrweiler v. Board of Supervisors, 226 Iowa 229, 231, 283 N. W. 889, 890; Eysink v. Board of Supervisors, 229 Iowa 1240, 1243, 296 N. W. 376, 378; 50 Am. Jur. 361, 362, section 358. When this is done it seems plain that the claimants and appellant, as their assignee and subrogee, could resort only to the ten per cent of the contract price which the highway commission was required to retain. The applicable statutes in chapter 452 are (all italics supplied):

"Section 10304. Subcontractors on public improvements. The following provisions shall be held to be a part of every bond given for the performance of a contract for the construction of a public improvement * * *:

"1. 'The principal and sureties on this bond hereby agree to pay * * * all just claims * * * for labor performed or materials furnished, in the performance of the contract on account of which this bond is given, when the same are not satisfied out of *the portion of the contract price which the public corporation is required to retain* until completion of the public improvement, but the principal and sureties shall not be liable * * * unless the claims of said claimants *against said portion of the contract price* shall have been established as provided by law.' [Here the bond contains the exact language of section 10304.]

"Section 10310. Payments under public contracts. Payments made under contracts for the construction of public improvements, unless provided otherwise by law, shall be made on the basis of monthly estimates of labor performed and material delivered; said payments to be made for not more than ninety percent of said estimates and to be so made that *at least ten percent of the contract price will remain unpaid at the date of the completion of the contract* * * *.

"Section 10311. Inviolability and disposition of fund. * * * *the retained percentage of the contract price,* which in no case shall be less than ten percent, *shall constitute a fund for the payment of claims* for materials furnished and labor performed on said improvement, and shall be held and disposed of by the public corporation as hereinafter provided.

"Section 10312. Retention of unpaid funds. *Said fund* shall be retained by the public corporation for a period of thirty days after the completion and final acceptance of the improve-

ment. If at the end of said thirty-day period claims are on file as herein provided the public corporation shall continue to retain *from said unpaid funds* a sum not less than double the total amount of all claims on file.

"Section 10313. Optional and mandatory actions—bond to release. The public corporation, the principal contractor, any claimant for labor or material who has filed his claim, or the surety on any bond given for the performance of the contract, may \* \* \* bring action in equity in the county where the improvement is located to adjudicate all rights *to said fund,* or to enforce liability on said bond. \* \* \*

"Section 10315. Adjudication—payment of claims. \* \* \* Payments from *said retained percentage,* if still in the hands of the public corporation, shall be made in the following order: \* \* \*

"Section 10316. Insufficiency of funds. When *the retained percentage aforesaid* is insufficient to pay all claims for labor or materials, the court shall, in making distribution under section 10315, order the claims in each class paid in the order of filing the same.

"Section 10317. Converting property into money. When it appears that the *unpaid portion of the contract price* for the public improvement, or a part thereof, is represented, in whole or in part, by property other than money, or if a deposit has been made in lieu of a surety, the court shall have jurisdiction thereover \* \* \*.

"Section 10319. Unpaid claimants—judgment on bond. If, after *the said retained percentage* has been applied to the payment of duly filed and established claims, there remain any such claims unpaid in whole or in part, judgment shall be entered for the amount thereof against the principal and sureties on the bond. In case *the said percentage* has been paid over as herein provided, judgment shall be entered against the principal and sureties on all such claims.

"Section 10320. Abandonment of public work—effect. When a contractor abandons the work on a public improvement or is legally excluded therefrom, the improvement shall be deemed completed for the purpose of filing claims as herein provided, from the date of the official cancellation of the contract. The

only fund available for the payment of the claims of persons for labor performed or material furnished shall be *the amount then due the contractor,* if any, and if said amount be insufficient to satisfy said claims, the claimants shall have a right of action on the bond given for the performance of the contract.

"Section 10322. Filing of claim—effect. *The filing of any claim shall not work the withholding of any funds from the contractor except the retained percentage, as provided in this chapter.*"

Appellant relies upon sections 10320 and 10312. With regard to 10320, appellant states its proposition thus:

"That as Burch defaulted in his contract the fund available for the payment of the laborers and materialmen became the entire amount due under the contract and held by the commission under the provisions of Section 10320 * * *."

Assuming without deciding that 10320 will bear the construction for which appellant contends, the argument cannot be sustained because Burch did not abandon the work on this improvement nor was he legally excluded therefrom as provided by this section. Nor was there any "official cancellation of the contract." On the contrary, Burch fully performed the work described in his contract, the highway commission approved and accepted it and issued its final estimate thereon. The stipulation of facts so states and appellant, by incorporating part of the petition of the Hercules Manufacturing Company, so alleges in its answer and cross-petition.

The other section which appellant contends makes the fund in controversy (in excess of the ten per cent) available to claimants is 10312. When considered in connection with the other sections of the chapter, especially 10310, 10311, and 10322, section 10312 will not fairly bear such a construction.

It is plain that the terms "said fund" at the beginning of 10312 and "said unpaid funds" later on in the same section refer to "the retained percentage of the contract price" (in this case ten per cent) found in section 10311, and a similar provision in section 10310. Section 10311 plainly says, "the retained percentage of the contract price, which in no case shall

be less than ten percent, shall constitute a fund for the payment of claims * * *.'' This provision, according to an elementary rule of statutory construction, excludes the fund here in controversy, in excess of the ten per cent, from claims for labor and material. See 50 Am. Jur. 238, section 244; Van Eaton v. Town of Sidney, 211 Iowa 986, 991, 231 N. W. 475, 71 A. L. R. 820, and cases cited; Vale v. Messenger, 184 Iowa 553, 558, 168 N. W. 281, and cases cited. Section 10322 is an express provision to the same effect. The plain meaning of 10312 is expressly recognized in Southern Surety Co. v. Jenner Bros., 212 Iowa 1027, 1035, 1036, 237 N. W. 500, 504, in these words:

"Under section 10312 of the 1927 Code, *said ten per cent* shall be retained 'by the public corporation for a period of thirty days after the completion and final acceptance of the improvement. If at the end of said thirty-day period claims are on file as herein provided the public corporation shall continue to retain *from said unpaid funds* a sum not less than double the total amount of all claims on file.' When, however, no claims were filed, as required by 10305, supra, within the thirty-day period, then *such ten per cent* need no longer be retained. Perkins Builders Supply & Fuel Company v. Independent School District, 206 Iowa 1144.

"*So, under the statute, the so-called ten per cent portion of the contract price* no longer exists, as such, if claims are not filed within the thirty-day period." (Italics supplied.)

Indeed, Southern Surety Co. v. Jenner Bros. holds that the terms, "the portion of the contract price which the public corporation is required to retain until completion of the public improvement" and "said portion of the contract price," found in section 10304, refer to the ten per cent provided for by section 10310. At pages 1033 and 1035 of 212 Iowa, page 503 of 237 N. W., it is said:

"The words 'said portion of the contract price' [in 10304] refer by inference to section 10310 * * * As previously stated, the surety is liable under the statutory contract set forth in section 10304 of the Code for such amount of the claims 'not satisfied out of the portion of the contract price which the public corporation is required to retain until completion of the public

improvement.' *Said portion to be thus retained is ten per cent. See section 10310.*" (Italics supplied.)

Not only do the terms "said fund" and "said unpaid funds" in section 10312 refer to the ten per cent retained percentage provided for by sections 10310 and 10311, but similar references are found in sections 10313 ("said fund"), 10315 ("said retained percentage"), 10316 ("the retained percentage aforesaid"), 10319 ("the said retained percentage" and "the said percentage"), and 10322, which provides:

"The filing of any claim shall not work the withholding of any funds from the contractor except *the retained percentage, as provided in this chapter.*"

Plainly, the terms "said fund," "retained percentage," and similar expressions throughout this chapter refer to the "retained percentage of the contract price, which in no case shall be less than ten percent" and which "shall constitute a fund for the payment of claims," provided for by 10311.

Appellant quotes a statement from Cities Service Oil Co. v. Longerbone, 232 Iowa 850, 858, 859, 6 N. W. 2d 325, 329, which is said to sustain its contention that section 10312 makes available to claimants all unpaid funds and not merely the percentage of the contract price which the highway commission is required to retain. This is the only authority appellant cites on this proposition. Fairly considered, the cited opinion bears no such construction. The statement relied upon is:

"When claims were filed herein within the 30-day period, the highway commission was required to retain 'not less than double the total amount of all claims on file.' [Section 10312, Code, 1939.] To that extent there was clearly a statutory retained percentage. * * *

"We agree with the trial court that the funds retained by the highway commission constituted statutory retained percentages herein, which, subject to the priorities fixed by section 10315, were available for the payment of claims filed with the court pursuant to section 10309, and, if such funds were insufficient, recovery might be had upon the bond."

The Cities Service opinion thus states the question to be decided and the decision, at page 853 of 232 Iowa, page 326 of 6 N. W. 2d:

"The question presented for our decision is clearly drawn. Does the failure of Concrete Products Corporation to file a claim with the highway commission within 30 days following the completion and acceptance of the work, in each instance, defeat. its right to recover upon the bond of the contractor in each case? The trial court answered in the negative. We agree."

That there was no intention in the Cities Service case to interpret section 10312 in accordance with appellant's contention is apparent from the following language of the opinion, at page 855 of 232 Iowa, page 327 of 6 N. W. 2d:

"Section 10310 provides for a retention of 10 per cent of the contract price. *Section 10312 provides that said 10 per cent shall be retained* for 30 days after completion and acceptance of the work, and, if claims are filed before the expiration of such 30-day period, the public officials shall continue to retain a sum 'not less than double the total amount of all claims on. file.' " (Italics supplied.)

The Cities Service case thus expressly recognizes that the term "said fund" at the beginning of section 10312 refers to the ten per cent retention fund provided for by 10310. This is in harmony with what is said in Southern Surety Co. v. Jenner Bros., supra.

The second sentence of section 10312 reads:

"If at the end of said thirty-day period claims are on file as herein provided the public corporation shall *continue to retain from said unpaid funds* a sum not less than double the total amount of all claims on file."

It is clear that the words "from said unpaid funds" in this sentence also refer to the same ten per cent retention fund as do the first two words in 10312, "said fund." Obviously, it would be impossible to "continue to retain" a larger amount after the thirty-day period than had been retained during such period. To construe section 10312 in accordance with appellant's

contention would be to read out of the second sentence of the section the words "from said unpaid funds," even though the statute is plain and unambiguous.

Here the lienable claims amounted to $2,370.77. If 10312 were to be given the meaning for which appellant contends, the highway commission was required to withhold double this amount or more than half the entire contract price. The clear meaning of the second sentence of section 10312 is that the public corporation shall "continue to retain" double the amount of claims filed but not in excess of the retained percentage, which in this case is ten per cent.

Our holding finds support in Federal Surety Co. v. Des Moines Morris Plan Co., 213 Iowa 464, 467, 239 N. W. 99, 100 (Evans, J.), where we held that as to payments in excess of the retained ten per cent the Morris Company, as assignee of the contractor, was entitled to prevail over the surety company that signed the contractor's bond and paid the amount of claims in excess of the retained percentage. The opinion states:

"The plaintiff's right of subrogation to the rights of the claim-holders may be conceded in an abstract sense. But the claim-holders had no lien upon the funds which came into the hands of the Morris Company. At this point the statute is conclusive. This provides that at least ten per cent of the estimates shall be retained by the public body. As to such retained percentage, liens attach in the order of filing claims. *The remainder of the monthly estimate becomes payable forthwith to the contractor.* Section 10322 provides:

" 'The filing of any claim shall not work the withholding of any funds from the contractor except the retained percentage.'

*"It has been the policy of the statute not to encumber these installments. There was, therefore, no lien upon the installments which were assigned to the Morris Company* and which passed through its hands. [Italics supplied.] * * *

"The plaintiff cites, and relies upon, a number of our own cases in support of its contention at this point. It is enough to say that each and all of them involve controversy over the *retained percentage.* As to such percentage, the claim-holders did acquire liens by the filing of their claims."

Since we are concerned mainly with the construction of our own statutes, there is little occasion to comment on outside decisions, but they have been considered. Although there is a conflict in cases of this kind generally (see 43 Am. Jur. 945, 946, section 201), there are some decisions that have awarded the unpaid funds in excess of the retained percentage of the contract price to the surety of the contractor in preference to his assignee. Most of such decisions proceed on the theory that the surety was subrogated to the rights of the obligee in the bond (here, the highway commission) rather than to the rights of laborers or materialmen. It is not necessary to determine whether such theory could be invoked here since no such claim is made by the pleadings in the case, and there is nothing in the record to indicate that such theory was advanced in any way in the court below.

Appellant suggests that it is entitled to prevail by reason of section 1109.11 of the specifications for construction work on the secondary road system, which provides:

"The Contractor guarantees the payment of all just claims against him or any sub-contractor in connection with this contract, and his bond will not be released by final acceptance and payment by the County Board, nor will final payment be made until all such claims are paid or released."

These specifications by reference appear to be a part of the contract. The specifications consist of a bound book containing more than three hundred pages. The record does not show that section 1109.11 was called to the trial court's attention although the book containing it was offered in evidence, along with other exhibits, when the facts were stipulated. It is not clear that section 1109.11 is applicable here since it apparently was intended to apply to a contract made by the county board of supervisors. Here the contract was between Burch and the state highway commission. So far as the record shows, the county board had nothing to do with the contract.

Aside from the above, however, we think the rights of the parties are governed by the provisions of statute which are, in effect, written into the contract. Appellant says in its brief:

"The contract * * * is a statutory contract and the terms

of the statutes are written into, and became a part of, the contract."

If there were a conflict between the terms of the contract and the statutes, the latter should prevail. The highway commission was powerless to enter into a contract except in accordance with the statutory provisions which we have analyzed. As stated, section 10311 provides, "the retained percentage of the contract price * * * shall constitute a fund for the payment of claims * * *" and section 10322 says, "The filing of any claim shall not work the withholding of any funds from the contractor except the retained percentage * * *." Here "the retained percentage" is ten per cent.

It is not to be understood from the foregoing that the highway commission could not contract to retain more than ten per cent of the contract price. The statutes expressly contemplate such right. Ten per cent is the minimum and not the maximum that must be retained. What we do hold is that there was no intention here to retain for the benefit of laborers or materialmen more than the ten per cent.

Finally, appellant contends that since the Fairfield bank did not apply the payments received from the highway commission to the reduction of Burch's indebtedness the bank does not come into court with clean hands and is not entitled to recover upon its assignment. The contention is without merit and is answered by what we have already said. The rights of laborers and materialmen and appellant as their subrogee are limited by statute to the retained percentage. The balance of the contract price was not encumbered. A similar contention was rejected in Federal Surety Co. v. Des Moines Morris Plan Co., 213 Iowa 464, 239 N. W. 99. There the contractor's assignee retained a part of each payment received but released the balance to the contractor. We held that no rights of the surety or of the holders of claims to whom it was subrogated were violated.

But assuming without deciding that appellant could complain of the release of the money to Burch if it were prejudiced thereby, there is no showing that Burch did not use the funds so released to him to pay laborers and materialmen or

otherwise in the performance of his contract. In the absence of such showing it does not appear that the surety was prejudiced by the bank's release of the funds to Burch.—Affirmed.

MANTZ, C. J., and BLISS, OLIVER, HALE, and WENNERSTRUM, JJ., concur.

MULRONEY and SMITH, JJ., dissent.

MILLER, J., takes no part.

MULRONEY, J. (dissenting)—I respectfully dissent.

The majority opinion holds that claimants for labor and material against the unpaid funds of a contractor can only resort to a per cent of the contract price (in this case ten per cent) for the payment of their claims, and that the contractor can assert a superior and paramount claim as against labor and material claimants, to a per cent of the contract price (in this case ninety per cent). This is the force of the majority holding when the case is stripped of the elements of subrogation to the claimants' rights, and assignment of the contractor's rights, about which there is no argument in this case.

The conclusion is arrived at, in the majority opinion, by construing various statutes in chapter 452, Code of 1939, and the provisions of the contract and bond. The fallacy of the majority reasoning, as I see it, lies in the failure to distinguish between the funds that can be resorted to by claimants after a contract has been completed and the duty of the public body to retain funds until the contract has been completed.

Sections 10310, 10311, and 10312 are statutes that fix the retention duty of the public body for some contracts. The majority construe these statutes and find therein the only funds to which claimants can resort for payment of their claims. I do not think they can be so construed. I think that after a contract has been completed, any funds due the contractor can be resorted to by claimants.

How else can one construe section 10308, which provides that a claim may be filed at any time, even after the thirty-day period following completion, "if the public corporation has not paid the full contract price"? Certainly the legislature meant that all funds due the contractor after completion were subject

to claims. The funds might be insufficient if installments were released under section 10310 or if the claim was filed more than thirty days after completion, but that does not mean that funds that had not been released could not be resorted to for the payment of claims that remained unpaid after completion. Notice section 10304, where the legislature wrote into every bond the unqualified agreement to pay all claimants.

It is apparent that section 10310 applies only to contracts that require more than one month for completion. If the fund to be resorted to for the payment of claims is found only in this statute and section 10311, then, since the statutes are not applicable to contracts requiring less than a month for completion, no funds of the contractor would be available for claimants.

I find nothing in sections 10310 to 10312 that would give the contractor the absolute right to any agreed percentage of the contract price, after the contract has been completed, as against filed claimants. I see in these statutes a plan to allow partial payments to the contractor, upon monthly estimates, which, when applied to certain contracts will mean that the fund available for claimants at the time of completion will be less than the full contract price. The statutes deal with the size of the fund that will be available for claimants when the contract is completed. They do not deal with the right of the claimant to assert his paramount claim at any time against any funds due the contractor who has completed his contract but has not paid for the labor or material. I differ with the majority in that I would construe the retention duty after completion of the contract, provided for in section 10312, to be double the amount of the claims on file thirty days after completion. But this difference is not significant in this case. All the funds were retained by the commission. The ninety per cent of the monthly estimate had been paid. All that was due the contractor was the final payment *after the contract was completed.*

This question has not been before us in any case where the contractor or his assignee asserted a right to funds, in excess of the ten per cent fund, remaining due the contractor after the completion and final acceptance of the contract. But we have in prior decisions recognized the right of claimants to

582

any or all funds in the hands of the public body after the completion of the contract.

In Perkins Builders Supply & Fuel Co. v. Independent Sch. Dist., 206 Iowa 1144, 1148, 221 N. W. 793, 795, we denied relief to a claimant when it appeared that he did not file his claim until after thirty days following the completion of the contract and after the municipality had fully settled with the contractor except for the nominal sum of one dollar. In the course of the opinion we stated:

"However, appellants claim that, since the school district withheld $1.00 from the payment on the final estimate, they have brought themselves within the provisions of the second sentence of the aforesaid section. [Section 10308.] It is clear, however, that, under said provision, the appellants would have no right *except as to the unpaid portion of the contract price,* to wit, $1.00. After the expiration of the 30-day period, the school district could have paid the entire amount, and neither said district nor the surety company would be liable. Therefore, in no event could the appellants prevail, except as to the amount of the $1.00 withheld." (Italics supplied.)

A study of Southern Surety Co. v. Jenner Bros., 212 Iowa 1027, 1035, 1038, 237 N. W. 500, 504, reveals that we there held the balance of the contract price, in excess of the ten per cent in the hands of the highway commission after the work was completed and the project accepted, available for claimants. This action was brought at the time when section 10305 provided for the filing of claims "with the officer authorized by law to issue warrants in payment of such improvement." Since this was a state highway commission improvement, such officer was the state auditor. The contractor completed the work and it was accepted and thereafter the surety brought action to determine its liability and to fix the rights of the other defendants as claimants. It appeared that labor and material claims totaling in excess of $10,000 had been filed with the county auditor, the highway commission, and with the district court. The highway commission at the time of suit held $9,201.12 due the contractor of which sum "* * * the sub-final estimate is $3,427.15, and the final estimate is $5,773.97." In

passing, let us note the similarity to the situation here where the funds held by the highway commission were $1,806.59, composed of the subfinal estimate of $886.20 and the final estimate of $920.39. In the language of the highway commission, the subfinal estimate seems to be the amount due the contractor over and above the ten per cent of the full contract price and the final estimate is ten per cent of the full contract price. In the Southern Surety case we held that the claimants were not entitled to any judgments against the surety for the provision of the statute with respect to bonds absolved it from liability "unless the claims * * * shall have been established as provided by law." But the claimants asserted they established their claims under the second paragraph of section 10308 and under section 10309 giving them the right to file claims after the thirty-day period after completion and with the district court. With regard to this claim we stated:

"*Unquestionably such filing, after the thirty-day period, will be sufficient to establish appellees' claim against the funds retained from the contractor's agreed consideration* * * *."

Consequently, we there held:

"Plainly, therefore, under the facts and circumstances presented in the present controversy, appellees can have no judgment against the appellant, as surety, on the contractor's bond, *but they are entitled only to the balance of the contract price remaining after the work was completed and the job accepted.* Paragraph two of section 10308, supra, authorizes appellees to receive such balance of the contract price. Because the district court held otherwise, the appellant is entitled to a reversal." (Italics supplied.)

Thus it will be seen that in the above case we held that both the subfinal estimate and the final estimate were available to claimants who filed after the thirty-day period following completion and acceptance of the improvement. Of course, if this fund is available for claimants who file after the thirty-day period, it is available for those who file before the expiration of that period. I feel that the majority opinion certainly overrules our holding in the above case.

Again, in Cities Service Oil Co. v. Longerbone, 232 Iowa 850, 858, 6 N. W. 2d 325, 329, the sum retained after the work under the contract was completed and accepted was in excess of ten per cent of the contract price. Claims were filed before the expiration of the thirty-day period after completion of the contract, and we there stated:

"When claims were filed herein within the 30-day period, the highway commission was required to retain 'not less than double the total amount of all claims on file.' [Section 10312, Code, 1939.] To that extent there was clearly a statutory retained percentage. * * * We agree with the trial court that the funds retained by the highway commission constituted statutory retained percentages herein, which, subject to the priorities fixed by section 10315, were available for the payment of claims filed with the court pursuant to section 10309, and, if such funds were insufficient, recovery might be had upon the bond."

The majority cites our opinion in Federal Surety Co. v. Des Moines Morris Plan Co., 213 Iowa 464, 239 N. W. 99. But the Morris Plan case was not a statutory action under this chapter. True, such a statutory action had earlier been brought in Marshall county which determined the surety's liability to claimants. All that we held was that the surety, held liable to claimants in a statutory action, could not recover from the contractor's assignee who had received the ninety per cent estimate payments from the county. The situation would be comparable if the surety here were seeking recovery for the payments already made to the bank under the assignment.

I would hold that the balance of the contract price, or $1,806.59, retained by the highway commission after the contract was completed and accepted was available for claimants. This being true, the contractor could not have asserted any right to these funds superior to claimants. His assignee, possessing only an assignment of "all moneys due or to which [contractor] may be now or hereafter entitled," has no superior right over a claimant that the contractor would not have. In Monona County v. O'Connor, 205 Iowa 1119, 1126, 215 N. W. 803, 806, we stated:

"An assignee of the contractor occupies the same position

as his assignor. ˌThe claims of the assignee are no higher or greater than those of the contractor.''

I would reverse.

SMITH, J., joins in this dissent.