E. D. Fowler, Appellant, v. Board of Trustees of Water Works City of Ottumwa et al., Appellees.

No. 41028.

October 27, 1931.

Rehearing Denied April 8, 1932.

E. G. Moon, for appellees.

Chester W. Whitmore, for appellant.

Albert, J.—The City of Ottumwa, which is located on the Des Moines River, is a city of the first class, with an approximate population of 28,000, and is operated under a commission form of government. Prior to 1910, there was a privately owned system of waterworks in said city, owned by a corporation, but during that year the City purchased said waterworks system. It consisted of a dam across the Des Moines River, a head race therefrom to the power site and plant which were near the center of the City. The City took over the plant, rehabilitated it, and has conducted it ever since. Later, under statutory authority, a board of trustees, consisting of three members, was elected to conduct such plant for the City. The bonds issued by the City for the purchase of said waterworks have all been paid, or there is a sufficient amount in the sinking fund to pay the balance thereof with interest due thereon. There is no showing

or claim that the proposed indebtedness hereinafter referred to will exceed the constitutional limitation.

The experience of the city soon showed that the waterwheel power used for pumping water during the stage of low water on the Des Moines River was inadequate, and a steam plant was added in the hydro-electric power house. This was approved at an election held on March 31, 1919, and the City was authorized by said election to establish, direct, maintain and operate a municipal electric light and power plant to be operated in connection with the present waterworks, and to furnish electricity for city purposes, and to install necessary equipment and a necessary distribution system to distribute and sell light and power within and without the City. After this addition was completed, all excess electric current produced was sold by the City to the Iowa Southern Utilities Company. This plant seems to have been a profitable investment for the City.

In later years it was concluded that new and larger improved waterwheels and generators could be installed, using the same dam and head race, thus affording a very much larger supply of electricity, which it was hoped could be disposed of with profit. It was then proposed to construct a new hydro-electric power house a few hundred feet below the one installed in 1914, and to install three modern waterwheels and generators therein, which was done. It was proposed to issue bonds in the sum of $225,000.00 to pay for the same. The plaintiff, a taxpayer in said City, instituted this action in chancery to enjoin the issuance of said bonds.

It will be noticed that at the time this latter construction was commenced and carried out, the City was the owner of a complete and going plant, and the proposed addition required was not from the necessity of the situation, but was purely a speculative proposition to increase the amount of electrical current which it had for sale. In some respects the case differs in its facts from Muscatine Lighting Company v. City of Muscatine, 205 Iowa 82, and Mote v. Incorporated Town of Carlisle, 211 Iowa 392, yet the rule laid down in those cases is applicable to the situation before us unless the situation is changed by reason of the enactment of Chapter 159, Acts of the 44th General Assembly.

The Constitution under which Iowa was admitted to the

398

Union was the result of a convention held at Iowa City, Iowa, in the year 1846, and contained a prohibition against the legislature's creating an indebtedness for the State in excess of one hundred thousand dollars without a majority vote of all of the electors of the State. See Article 7.

The Constitutional Convention of 1857 placed a similar limitation on the power of the legislature to create an indebtedness, but increased the amount thereof to $250,000.00. See Article 7, Constitution 1857.

The latter is the provision of the Constitution of the State of Iowa at the present time.

Section 3, Article 11, of the Constitution of 1857 prohibited counties or other political or municipal corporations from becoming indebted in any manner or for any purpose in an amount, in the aggregate, exceeding five per cent on the value of the taxable property within such county or corporation. This prohibition is in our Constitution at the present time. It demonstrates the wisdom and intention of the people in the formation of this commonwealth to keep within their own hands the right to prevent the expenditure of large sums of money without their consent, and it has been the general public policy of this state in conferring power upon municipalities and other subdivisions of the state to recognize this principle, and in all legislation where power is conferred to create indebtedness, it has been quite the uniform rule to provide a limitation beyond which indebtedness cannot be created without a majority vote of the electors.

The first legislation on this proposition is Chapter 17 of the Acts of the 14th G. A., later designated as Section 461, Code, 1873, where power is given to cities and towns to establish and maintain free public libraries. It was there provided that no appropriation of money could be made therefor unless the proposition was submitted to a vote of the people.

The same General Assembly, in Chapter 78, Section 1, gave power to cities and towns to erect or authorize the erection of waterworks, and it was provided that no such works should be erected or authorized unless a majority of all of the votes of the municipality cast at any general or special city or town election, or by the affirmative vote of not less than four-fifths of the members of the council or trustees of such city or incorporated town, so ordered. (See Sections 6239 and 6241, Code, 1927.) The

provision of Section 1, Chapter 78, of the 14th G. A. was modified by taking from the city council the power to erect or authorize the erection of waterworks by a four-fifths vote of its membership, leaving it wholly with the electors of the municipality to determine the question.

Since the 14th General Assembly, many statutes have been passed from time to time touching this question, yet through all of them has run the thought that the people still retain the power to pass upon the larger expenditure of funds or creation of indebtedness.

Various existing laws authorizing cities and towns to incur indebtedness are compiled in Section 6239, Code, 1927. Such indebtedness can not be incurred·until the same is authorized by an election. (See Section 6241, Code, 1927.)

The first subdivision of Section 6239, Code, 1927, provides that cities and towns, when authorized to acquire the following named public utilities and other improvements may incur indebtedness for the purpose of purchasing, erecting, extending, reconstructing, or maintaining and operating waterworks, gasworks, electric light and power plants, or the necessary transmission lines therefor, and heating plants.

It is quite apparent, therefore, that what the city is here attempting to do in creating this indebtedness is to exercise the power conferred by said Section 6239, and it is equally true that under Section 6241, Code, 1927, this indebtedness can not be created until authorized by an election. In reply to this conclusion, however, it is asserted that these matters are all obviated by reason of Chapter 159 of the Laws of the 44th G. A., reading as follows:

"In cities having a population in excess of twenty-five thousand and less than seventy-five thousand and which have no outstanding general city bonds issued for the purpose of purchasing or constructing heating plants, water or gas works and electric plants or which have a sinking fund sufficient to retire such general bonds as may be outstanding, and having a board of trustees as provided by this chapter, such board of trustees may, upon resolution, issue bonds at a rate of interest not to exceed five per cent per annum for the purpose of extending or improving such heating plant, water or gas works or electric

plant. Bonds issued under this section shall be first mortgage bonds against the said utility, and not general bonds of the city. No bonds shall be issued in this manner in excess of twenty-five per cent of the book value of the plant as shown by the books of the city. The interest and the principal of such bonds must be paid from the net earnings of the utility against which they are issued. Bonds issued under this provision shall not be for a longer period than twenty years and shall be retired serially in equal amounts beginning not later than the third year after issuance.''

Section 6149, Code, 1927, reads as follows:

''The board of trustees shall have all the power and authority in the management and control of the utilities mentioned in the question submitted to the voters at such election as is conferred upon waterworks trustees appointed as provided in chapter 313.''

It is apparent from the aforesaid Act of the 44th G. A. that special provisions are made for issuing bonds under certain conditions in cities having the population therein prescribed, and power to so issue said bonds is conferred upon the board of trustees who have control of the utility. This is simply an added power, under the conditions prescribed, to those already possessed by said board of trustees. There is no provision whatever that the general statutes governing the creation of indebtedness by municipalities shall not govern as to the proposed bonds to be issued by such board of trustees. Had the legislature intended that such bonds should be issued without an approving vote of the people, it could easily have so said, in the light of the public policy heretofore existing, and the fact that the issuance of the bonds herein proposed under any other circumstances would require an approving vote of the people. The aforesaid Act of the 44th G. A. makes no provision whatever repealing the existing laws.

Repeal by implication has always been frowned upon by the courts and has been repeatedly held in disfavor by this court. In Chrisman v. Brandes, 137 Iowa 433, we held that a statute will not be held to be repealed by implication unless it be found absolutely necessary.

It has ever been the general rule that if by any fair and reasonable construction prior and later statutes can be reconciled, both shall stand. If it can be avoided, no court can conclude that a statute is repealed by implication. Casey v. Harned, 5 Iowa 1; Baker & Griffin v. The Steamboat Milwaukee, 14 Iowa 214; Burke v. Jeffries, 20 Iowa 145. A repeal by implication is not to be presumed. Risdon v. Shank, 37 Iowa 82. Any reasonable construction may be adopted to avoid a repeal by implication. State v. Brandt, 41 Iowa 593.

Without citing further authority on this proposition, the last expression of this court will be found in Ogilvie v. City of Des Moines, 212 Iowa 117.

So long as the legislature did not see fit in its enactment of the aforesaid chapter of the 44th G. A. to free the proceedings from an approving vote of the people, and so long as it did not provide for a repeal of conflicting statutes, we do not think this court is warranted in saying that the section requiring the submission of such question to the voters at an election held for that purpose is repealed by implication. We are led to the conclusion that the bonds provided for in this act can not be issued without an approving vote of the electors of that city.

The district court erred in holding otherwise.—Reversed.

FAVILLE, C. J., and MORLING, WAGNER, and GRIMM, JJ., concur.

EVANS, STEVENS, DE GRAFF, and KINDIG, JJ., dissent.