STATE *ex rel. v.* SOUTHERN PUB. ASS'N.

(*Nashville,* December Term, 1935.)

Opinion filed July 13, 1935.

CATE & CATE, of Nashville, for appellant.

BASS, BERRY & SIMS, of Nashville, for appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is a suit, in the nature of *quo warranto,* brought in the name of the state by the Attorney General for Davidson county, on relation of a number of citizens engaged in the printing and publishing trade, to enjoin the defendant corporation, chartered in 1907, under our general welfare statutes, for religious and educational purposes, from "soliciting orders for printing and doing work incidental thereto, and from doing printing or publishing for compensation for any other person, firm or corporation, or for any State or any branch or department thereof, or for any County or municipality, or any branch or department thereof." The facts are undisputed and the cause was heard on bill and answer. It appears that, in addition to the prosecution on a large scale of its religious and missionary enterprises, and the publication and dissemination of numerous forms and types of religious literature, the defendant was doing, also, a commercial job printing and publishing business for profit, in direct competition with relators and others so engaged. It was this trading branch or feature of the defendant's activities that was sought by the bill herein to be restrained, as beyond its charter powers.

The chancellor was of opinion that the holding of this

court in the recent case of *State ex rel.* v. *Southern Junior College*, 166 Tenn., 535, 64 S. W. (2d), 9, 10, was controlling, and granted a decree enjoining the defendant substantially in accordance with the prayer of the bill above quoted. Defendant has appealed and insists (1) that its charter powers authorized it to conduct a general publishing and printing business, and (2) that it may do so for profit, without restriction as to the extent thereof, or as to the persons dealt with, so long as the profits derived are wholly devoted to the main purposes of the organization, namely, religious and educational objectives. As to the scope of its charter powers, reliance is had on the special provisions incorporated in its application for its charter, duly granted, reading as follows:

"The general purpose and object for which this corporation is formed is to further by all proper and legitimate agencies and means, the dissemination of religious and moral instruction, and for the support of public worship, the building of churches and chapels, and the maintenance of all missionary undertakings; to secure and hold copyrights and plates of books, periodicals, tracts and pamphlets; to publish, print, buy, sell and circulate literature in any or all languages and countries; to purchase types, presses, paper, etc., for the purpose of printing newspapers, books, pamphlets, etc., and do all things necessary to carry on a printing and publishing business; to receive gifts and legacies and donations from any sources whatsoever; to make gifts and appropriations from any or all of its resources from time to time to carry out the objects and purposes of the association; and to exercise all such power and authority as may be necessary to carry out the purposes and objects above

specified. But the purpose and essence of this corporation, being purely benevolent, charitable and philanthropic, it is hereby expressly declared that this is a corporation not for gain or individual profit, that no dividends shall ever be declared or paid to any of its members, and that none of its property, real or personal, shall ever be used or expended except in carrying into effect the legitimate ends and aims of its being.''

For its insistence that its right to do a general printing and publishing, although competitive, business for a profit is unlimited, so long as its profits are devoted to the furtherance of its main objective, to wit, ''the dissemination of religious and moral instruction, and for the support of public worship, the building of churches and chapels, and the maintenance of all missionary undertakings,'' reliance is had on holdings of this court in cases dealing with the taxation of property of general welfare corporations.

What was said in *State ex rel.* v. *Southern Junior College, supra,* in response to a like reliance upon this line of cases applies equally here. It was there said:

''We are referred to *M. E. Church, South,* v. *Hinton,* 92 Tenn., 188, 21 S. W., 321, *Vanderbilt University* v. *Cheney,* 116 Tenn., 259, 94 S. W., 90, and cases following those decisions as opposed to the result herein reached. None of these cases is in point. Nothing was involved in any of them except the liability of certain charitable and educational institutions for taxation. There was no question of the charter power of any of those corporations to pursue the particular endeavor which was claimed to have secularized its efforts. In *M. E. Church, South,* v. *Hinton,* the publishing house there involved was expressly

empowered to conduct a printing business. In *Vanderbilt University* v. *Cheney*, the charter power of the university to own the office building and apartment house was not challenged. So with the other cases."

The case quoted from was similar on its facts, and as to the principle involved, to the instant case, and we agree with the chancellor that this case is largely controlled by that.

In considering the true scope of the powers conferred by virtue of the recitals in the charter of the special objects and purposes of the incorporation, hereinbefore set out, it must be borne in mind that such recitals confer no powers unless "within the purview" of one or more of the eleven paragraphs now set forth in the Code, section 4146 (Shannon's, section 2513), enumerating the different subdivisions of objects for which corporations not for profit may be organized. The "form of charter," section 4147, provides that there shall be filled in "the general purposes for which the charter is sought, embracing a full, but not necessarily minute, account of the objects of the association, and embodying, *verbatim*, in the statement, the proper one or more of the eleven paragraphs in the previous section within the purview of which said objects come."

While this charter does not embrance, *"verbatim,"* either one of the said paragraphs, it substantially follows paragraph "(1) Religion," and must be related thereto. Whatever is recited in the charter under its special powers which is not "within the purview," that is, the apparent scope and intent, of the objects set forth in this paragraph (1) forms no proper part of the charter. The inclusion of more or less than the incorporation statutes

authorize "adds nothing legally." *Anderson-Dulin-Varnell Co.* v. *Williams*, 148 Tenn., 388, at page 395, 255 S. W., 597, 599, and cases there cited.

We come then down to this: Can it be fairly said that the right to conduct a general commercial printing and publishing business, for and with the public, for profit, is "within the purview," that is, "the extent of the intention" (Webster's New International) of the following statutory statement of objectives? "The support of public worship, the building and maintenance of churches, parsonages, schools, hospitals, chapels, and such other religious, educational, or benevolent institutions as may be necessary or proper to the work of missionary bodies in the United States, or in any foreign country, and the maintenance of all missionary undertakings." Code, section 4146.

We think not, and particularly so when it is expressly provided in a following section (4157) that "by no implication shall it engage in any kind of trading operation." This denial of the right applies with equal force whether it is the plan and purpose to devote the profits earned in the "trading operation" to religious or educational objects, or to use these profits otherwise. It is only so long as profits are earned incidentally only in the prosecution of the direct objectives of the association that they may be earned at all. We think it true here, as found in *State ex rel.* v. *Southern Junior College, supra,* that "the carrying on of the business of commercial printing," for the outside public generally "had no reasonable relation to the" support of public worship and other religious and educational objectives set forth in the statute.

No hard and fast rule can be laid down governing this class of cases, and each must turn on its own facts, but it seems to us clear that it was not within the intention of general welfare, not for profit incorporation statutes, that a side line, commercial trading for profit business should be thus conducted under the charter. powers granted, and we are constrained to affirm the chancellor, with the modification that the injunction will follow and be limited by the language of the prayer of the bill, restraining the defendant, "from further soliciting orders for printing and doing work incident thereto, and from doing printing or publishing for compensation for any other person, firm or corporation, or for any State or any branch or department thereof, or for any County or municipality or any branch or department thereof."

This worthy association will thus be free to prosecute the objects for which it was organized, publishing for dissemination its literature in all forms, and doing all such printing as may be incidental thereto.