STATE OF IOWA ex rel. DON MCELHINNEY, appellee, v. ALL-IOWA AGRICULTURAL ASSOCIATION, appellant.

No. 47844.

(Reported in 48 N.W.2d 281)

June 5, 1951.

Elliott, Shuttleworth & Ingersoll, V. C. Shuttleworth and Harry Wilmarth, all of Cedar Rapids, for appellant.

Barnes, Wadsworth, Elderkin & Locher, D. M. Elderkin, J. J. Locher, Jr., and Howard M. McLaughlin, all of Cedar Rapids, for appellee.

Shepard & Shepard, of Allison, for the Fair Managers Association of Iowa, as amicus curiae.

GARFIELD, J.—Defendant, a nonprofit corporation organized under what is now chapter 504, Iowa Code 1950, owns and operates fairgrounds known as Hawkeye Downs near the outskirts of Cedar Rapids where the All-Iowa Fair is held each year. By contract with one Gerber made in January 1950, superseding a prior contract between them made in October 1949, defendant leased to Gerber its amphitheater and quarter-mile track for the racing season between May 1 and November 1 of each year for five years. Gerber was permitted to hold auto races once each week during such periods or as often as both parties agree. As rental Gerber agreed to pay defendant half the gate receipts above $1100 at each event. Either party might cancel the agreement on thirty days notice after November 1, 1950.

Relator, who owns and operates an auto race track in Cedar Rapids, brought this equity action in the nature of quo warranto, claiming that defendant exceeded the power conferred upon it by law in making such contract with Gerber and asking that it be held void and defendant enjoined from carrying it out. Following trial such relief was granted and defendant has appealed.

It is not claimed defendant has exceeded the powers contemplated by its articles of incorporation which list among its objects and the general nature of its business: "to sponsor * * * or license, at any fair or other times * * * automobile racing * * * and other amusement enterprises." Nor is it contended chapter 504 under which defendant was incorporated contains any limitation of power which defendant has exceeded. Basis for plain-

tiff's case is the claim that defendant possesses only such power as granted by Code chapter 174.

Sections 174.1 and 174.2 provide:

"174.1 Terms defined. For the purposes of this chapter:

"1. 'Fair' shall mean a bona fide exhibition of agricultural, dairy, and kindred products, livestock, and farm implements.

"2. 'Society' shall mean a county or district fair or agricultural society incorporated under the laws of this state for the purpose of holding such fair, and which owns or leases at least ten acres of ground and owns buildings and improvements situated on said ground of a value of at least eight thousand dollars * * *.

"174.2 Powers of society. Each society may hold annually a fair to further interest in agriculture and to encourage the improvement of agricultural products, livestock, articles of domestic industry, implements, and other mechanical devices. It may offer and award such premiums as will induce general competition."

Plaintiff's basic contention, upheld by the trial court, is in substance that sections 174.1, paragraph 2, and 174.2 define the power defendant and similar corporations may exercise and impliedly prohibit the exercise of other powers. This latter conclusion is reached by application of the principle of statutory interpretation that the mention of one thing implies the exclusion of others—expressio unius est exclusio alterius. See Van Eaton v. Town of Sidney, 211 Iowa 986, 991, 231 N.W. 475, 71 A.L.R. 820, 826, and citations; Hercules Mfg. Co. v. Burch, 235 Iowa 568, 574, 16 N.W.2d 350, 353; 50 Am. Jur., Statutes, sections 244, 429.

The contract between defendant and Gerber is admitted. Plaintiff offered very little evidence. Defendant however offered much evidence, without substantial dispute, that it and other similar corporations for many years have permitted the use of their grounds for hire outside of fair time for races, circuses, carnivals, rodeos, ball games and other entertainment; these practices were well-known to administrative officials who never construed the law to prohibit them and never withheld state or county aid from any "society" which permitted them.

There is also much undisputed testimony that the holding of auto races and other amusements outside of fair time stimulates attendance at the fairs by familiarizing those who attend such amusements with the facilities on the grounds, getting them accustomed to go to the grounds, affording crowds (shown to be as large as 25,000) to whom advertisements of the fairs may be directed, and in other ways.

Defendant's officers testified the receipts from merely holding the fair and from state and county aid are insufficient to meet its expenses and maintain its property, valued at about $374,000. Defendant has about 160 acres of land. The amphitheater seats about 12,000. A manager at $5000 a year and caretakers are employed on a year-round basis. Insurance on the buildings costs from $3000 to $5000 annually.

There is a good deal of evidence too as to the valuable contributions defendant has made to agriculture by permitting use of its grounds throughout the year for cattle, swine and sheep demonstrations of an educational nature, meetings of 4-H Club boys and girls and Future Farmers of America, and for kindred projects.

During the ten years from 1940 to 1949, inclusive, defendant received total state aid under Code chapter 174 of $11,354 and county aid of $81,574. It is not claimed any county aid was expended except as required by Code section 174.18 or that any state aid was spent except as contemplated by 174.9.

The above is a sufficient indication of the voluminous evidence upon the trial. We will go more into detail later.

We may observe that since this case was submitted to us Code section 174.2, which, with 174.1, paragraph 2, plaintiff contends limits the powers of defendant and like corporations, was amended by House File 152 of the Fifty-fourth General Assembly, doubtless as an aftermath of this litigation, by adding thereto:

"In addition to the powers granted herein the society shall possess the powers of a corporation not for pecuniary profit under the laws of this state and those powers enumerated in its articles of incorporation, such powers to be exercised before and after the holding of fairs."

This amendment does not take effect until July 4, 1951, is not retroactive and does not relieve us from deciding the case. However, the decision seems less important to other fair societies and perhaps to the public because of this amendment.

In general, this amendment to 174.2 declares what defendant contends is already the law. Little if any weight should here be given passage of this amendment. It does not necessarily indicate an intent to change the meaning of the existing law nor amount to legislative recognition that the present section 174.2 means what plaintiff contends. The amendment may have been enacted so the statutes will correspond to what had previously been supposed was the law rather than to effect a change therein. See Hansen v. Iowa Emp. Sec. Comm., 239 Iowa 1139, 1141, 1142, 34 N.W.2d 203, 205, and citations.

██ As plaintiff argues, a corporation organized under a general law may exercise only such powers as are authorized by the law and those reasonably incident thereto. The provisions of statute enter into and form part of the corporate charter. Articles of incorporation may not clothe the society with powers not authorized by law. In case of conflict in this regard between the statute and the articles the statute governs. See State ex rel. v. Southern Pub. Assn., 169 Tenn. 257, 84 S.W.2d 580, 100 A.L.R. 576, and annotation 579; People v. United Medical Service, 362 Ill. 442, 200 N.E. 157, 161, 103 A.L.R. 1229, 1236; 19 C.J.S., Corporations, sections 947b, page 377, 948k, page 383; 13 Am. Jur., Corporations, section 742.

██ ██ As before stated, it is not contended defendant has exceeded any limitation of powers found in Code chapter 504 under which it was incorporated. The authorities just cited are of no aid to plaintiff unless defendant has only such power as provided by section 174.2, above-quoted, to "hold annually a fair." We are unable to agree that the statutory powers of defendant are thus limited by section 174.2. We think this section does not prohibit the exercise of corporate powers authorized by the chapter under which the corporation was formed and those reasonably incident thereto that are not in violation of the articles of incorporation. Chapter 174 contains no provision by which a society may be incorporated under that chapter. It does not deal

with incorporation. Obviously the society must be incorporated under another chapter of the Code. When defendant was organized under chapter 504 or, as stated in section 504.2, "upon filing such articles," certainly it was clothed with the powers enumerated in chapter 504 and those reasonably incident thereto that were not in violation of its articles.

Defendant did not qualify as a society under section 174.1, paragraph 2, merely by its incorporation. It was required also to own or lease "at least ten acres of ground and" own "buildings and improvements situated on said ground of a value of at least eight thousand dollars * * *." Even then it was not entitled to state aid under chapter 174 unless it- filed with the state fair board the sworn statement required by section 174.9. Defendant was of course not compelled to qualify for state aid and theoretically might never do so. Clearly until it did so qualify it was clothed with the powers enumerated in the chapter under which it was organized. If it ever lost any of such powers the loss must have occurred when it qualified for or perhaps received state aid under chapter 174.

Implicit in plaintiff's case, it seems to us, is the claim that by qualifying for or accepting state aid under chapter 174, section 174.2, above-quoted, limited defendant to the single power to "hold annually a fair." If the legislature so intended, section 174.2 falls considerably short of expressing such intent.

It is true plaintiff is not asking that defendant be held to have no powers other than holding annually a fair. It seeks only to have the contract with Gerber declared ultra vires and to enjoin carrying it out because relator is not interested in further relief. But as previously indicated, basis for plaintiff's case is the claim that section 174.2 limits defendant's powers. It cannot be contended there is any limitation in 174.2 except to the annual holding of a fair. If under the case presented to us plaintiff should be granted the relief sought there would be no logical basis for not holding that defendant's powers are limited by 174.2 to annually holding a fair.

Plaintiff argues that chapter 504 is intended "only to provide for the procedural and mechanical aspects of organizing the various corporations therein enumerated. * * * Following organiza-

tion there can be, properly, no reference to chapter 504 other than to ascertain the length of the society's life under section 504.8 and how to amend its articles under 504.18." .The effect of plaintiff's argument is that the language of section 174.2, "Each society may hold annually a fair * * *", supersedes the provisions of chapter 504 as to powers of a nonprofit corporation like defendant. We are unable to find from the language of 174.2 the legislative intent to thus limit the powers of a corporation, enumerated in the chapter under which it was organized or those incident thereto. For the extent of such powers see State v. Amana Society (Ladd, J.), 132 Iowa 304, 109 N.W. 894, 8 L.R.A., N.S., 909; Thompson v. Lambert, 44 Iowa 239.

Section 174.2 was enacted in substantially its present language in 1924 as section 22 of House File 66 of the Fortieth Extra General Assembly (Unpublished Acts). The title to the act recites it is "AN ACT to amend, revise, and codify" numerous designated statutes "relating to state fair and agricultural organizations receiving state aid." Chapter 504, much as in its present form, has been in effect since the Code of 1860 (chapter 53). What plaintiff's argument really amounts to is that section 174.2 has repealed by implication long-standing provisions of chapter 504 as to powers of a nonprofit corporation such as this defendant.

Repeals by implication are not favored by the courts and will not be upheld unless the intent to repeal clearly and unmistakably appears from the language used and such a holding is absolutely necessary. The general rule is that if by any fair and reasonable construction prior and later statutes can be reconciled both shall stand. See McGraw v. Seigel, 221 Iowa 127, 131, 263 N.W. 553, 106 A.L.R. 1035, 1038; Fowler v. Board of Trustees, 214 Iowa 395, 238 N.W. 618; Ogilvie v. City of Des Moines, 212 Iowa 117, 121, 122, 233 N.W. 526; City of Fairfield v. Shallenberger, 135 Iowa 615, 618, 113 N.W. 459; 50 Am. Jur., Statutes, sections 538, 539; 59 C.J., Statutes, section 510.

We think section 174.2 does not clearly and unmistakably limit the exercise of corporate powers to the holding of an annual fair. We feel too, as defendant suggests, resort may properly be had to rules of construction to determine the meaning of 174.2. Indeed plaintiff has placed strong reliance throughout upon the

868

doctrine "expressio unius est exclusio alterius" which is merely a rule of construction. Of course resort could not be had to construction if the statute were clear and unambiguous. Iowa Farm Serum Co. v. Board, 240 Iowa 734, 742, 35 N.W.2d 848, 852; 50 Am. Jur., Statutes, section 225.

█ A well recognized rule is that, while not controlling, courts give much weight to the construction of statutes by administrative officials charged with their operation and enforcement. Especially where such construction is of long standing it will not be lightly discarded by the courts. See Heiliger v. City of Sheldon, 236 Iowa 146, 164, 18 N.W.2d 182, 191; State v. Robbins, 235 Iowa 602, 607–609, 15 N.W.2d 877, 879, 880; John Hancock Mut. Ins. Co. v. Lookingbill, 218 Iowa 373, 386–390, 253 N.W. 604, and citations; Model Laundry Co. v. Barnett, 180 Iowa 55, 61, 162 N.W. 830; 59 C.J., Statutes, section 609.

█ Another rule is that the practical construction of a statute, the meaning given it by contemporary usage, is presumed to be the true one and will not be disturbed except for cogent reasons. See 50 Am. Jur., Statutes, section 319; 59 C.J., Statutes, sections 607, 608; Farmers Telephone Co. v. Town of Washta, 157 Iowa 447, 458, 133 N.W. 361; Swanson v. City of Ottumwa, 118 Iowa 161, 188, 91 N.W. 1048, 59 L.R.A. 620; Allen v. Clayton, 63 Iowa 11, 21, 18 N.W. 663, 50 Am. Rep. 716. And see citations last above.

As previously intimated, there is a strong showing here that officials and contemporary usage have long construed the statutes contrary to plaintiff's contention. We will refer to some of the evidence.

The secretary of the state fair board estimated that seventy-five to eighty-five per cent of county and district fair societies have revenue other than from operation of their fairs. To his knowledge revenue outside of fair time came from such activities as auto races, rodeos and ball games. He never refused to certify to the state comptroller any such society for the payment of state aid. (See section 174.12.) The state fairgrounds have frequently been used for various entertainments when fair was not being held.

The state secretary of agriculture said fair societies have for

many years held rodeos, shows, carnivals, auto races and other events outside of fair time and he had never known any protest with reference thereto. The state comptroller said warrants for state aid had never been denied any fair society because of use of its grounds for entertainment events outside of fair time and he knew such societies have so operated for many years. The present governor of the state, one of his predecessors and two members of the legislature attended auto races on defendant's grounds when its fair was not in session.

The total receipts by fair societies from activities other than fairs and the amounts paid the various societies for state and county aid are of course matters of public record.

It fairly appears the secretary of state has consistently approved (see section 504.1) articles of incorporation of fair societies organized under Code chapter 504 where the articles provide the society may hold a fair, receive the benefits provided by law for such societies, and in addition hold various entertainment events outside fair time. Of course, as the trial court observed during the trial and as we have already intimated, it was not known when such articles were approved that the societies would qualify for state aid.

In this connection, we have held the secretary of state does not exercise a mere ministerial function in approving articles of a corporation for profit under what is now chapter 491. Lloyd v. Ramsay, 192 Iowa 103, 115, 183 N.W. 333. It is true section 491.6 contemplates greater consideration of such articles by the secretary of state than does section 504.1 as to articles of a nonprofit corporation. Both sections, however, call for his approval of the articles.

It seems unlikely to us the legislature intended section 174.2 to limit the powers of every society receiving state aid to the annual holding of a fair. A corporation owning property of such value as defendant's, under large year-round expense for management, care and maintenance, should not be confined to the annual holding of a fair unless the legislative intent so to do is stated more clearly than in 174.2.

The principal object of chapter 174 appears to be to prescribe the qualifications fair societies must meet in order to re-

ceive state and county aid. Section 174.2 merely authorizes the holding of an annual fair for certain purposes. It does not purport to enumerate corporate powers nor to deprive any "society" formed under chapter 504 of the powers therein enumerated.

We see no good reason why defendant, upon receiving state and county aid, may not continue to exercise the powers conferred by chapter 504 and those reasonably incident thereto. At least the legislature has not prohibited it from so doing.

We have not overlooked the frequent references in plaintiff's argument to the exemption from taxation of grounds and buildings of agricultural institutions under Code section 427.1, paragraph 9. As we view it, the matter of tax exemption has little if any bearing on the construction to be given chapter 174 under the issues here.

Other contentions of defendant need not be discussed.— Reversed.

All JUSTICES concur except THOMPSON, J., who takes no part.