## The METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Appellant, v. The NASHVILLE PI BETA PHI HOUSE CORPORATION, Appellee.—407 S.W.(2d) 179.

Middle Section. April 20, 1966.

Certiorari Denied by Supreme Court September 6, 1966.

Seymour Samuels, Jr., Nashville, for appellant.

Cornelius & Collins, C. Hayes Cooney, Nashville, for appellee.

HUMPHREYS, J.  Appellee sued appellant to recover real property taxes, interest and penalties, paid under protest, for the years 1959 through 1962, in the amount of $2,803.10. Only these years were involved since appellee sold the property in 1962.

Appellee claimed its real property was exempted from taxation by Article 2, Section 28 of the Constitution of Tennessee, and T.C.A. secs. 67-501 and 67-502, subsection (2).

The theory of the original bill was that appellee as a general welfare corporation incorporated pursuant to T.C.A. sec. 43-1101 et seq. was entitled to an extension of the real property tax exemption enjoyed by Vanderbilt University dormitories. The theory of appellant's answer was that since appellee is not an educational institution, appellee's real property was not so owned or occupied as to bring it within T.C.A. sec. 67-501 and sec. 67-502, and so appellee was not entitled to recover.

The Chancellor held that appellee ''is a general welfare corporation and in the use of its property was engaged in essential functions of Vanderbilt University, an educational institution, as an integral part thereof and under the direct supervision and control of the duly constituted officials of said University.'', and so the property was exempt and appellee entitled to recover. Appellant has appealed and assigned errors.

The sole question is whether T.C.A. secs. 67-501 and 67-502 exempted appellee's property from ad valorem taxation. We have concluded appellee's property was not so exempted.

There is no particular controversy about the facts, most of these have been stipulated, as follows:

''1. That complainant, The Nashville Pi Beta Phi House Corporation, is one of the active chapters of the Pi Beta Phi Sorority, a corporation organized at Monmouth College, Monmouth, Illinois in 1867, under the laws of the State of Illinois, and with leave of the Court,

complainant's bill may be corrected by interlineation, changing 'Ohio' to 'Illinois.' The national sorority is composed of numerous branches of active chapters located on the campuses of many colleges and universities throughout the United States, the said chapters being established only in conjunction with educational institutions. The Sorority now has several thousand members, both active and alumnae. The purposes of the Sorority, as set out in an agreement uniting all members, is a mutual pledge by all members to assist each other in obtaining and maintaining a high degree of educational attainment, moral character and intellectual cultivation among the members.

2. That complainant 'The Nashville Pi Beta Phi Corporation' was established at Vanderbilt University in Nashville on September 9, 1940 and has been in continuous existence since that time.

3. That Exhibit No. 1 to the Original Bill is a true and correct photocopy of the charter of complainant, and shows that complainant was incorporated as a non-profit, general welfare corporation (T.C.A. Sec. 48-1101, et seq) on July 16, 1941 under the name 'Nashville Alumnae Chapter of Pi Beta Phi, Incorporated'; and that such charter is of record in Corporation Book Volume 0-14, page 27, in the office of the Secretary of State, and also of record in Book 826, page 26, in the Register's Office for Davidson County, Tennessee. Exhibit No. 2 to the Original Bill is a true and correct photocopy of an amendment to the charter of complainant, and shows that said charter was amended on May 28, 1953, and among other matters, contained therein the name of the corporation was changed to 'The Nashville Pi Beta Phi House Corporation,' and

that said amendment is recorded in Corporation, Record Book P-37, at page 435, in the office of the Secretary of State of Tennessee, and in Book 80, page 309, Register's Office for Davidson County, Tennessee.

4. That the defendant, The Metropolitan Government of Nashville and Davidson County, is a public municipal corporation with municipal powers organized and existing under the law of the State of Tennessee, and by Article 20, Section 20.03 of its charter, succeeded to all liabilities and causes of action of the former County of Davidson and City of Nashville, which were in existence and performing as governmental bodies governed by the laws of the State of Tennessee, and with governmental powers, including the right to assess and collect taxes, among other powers, at the time the matters and things hereinafter complained of occurred.

5. That complainant was the owner of real estate situated at 118 24th Avenue North, in the City of Nashville, and described in detail in the Original Bill.

6. That on the real estate referred to in Paragraph 5 above, there was located a two-story house having a living room, dining room, a library, four bedrooms, a kitchen, two bathrooms and a study room, maintained as a sorority house for the use of members of the Sorority. The bedrooms were rented only to members of the active chapter who were students at Vanderbilt University, and not more than thirteen persons, including a House Counsellor, were permitted to live in the house at one time. The members who lived therein and utilized the accommodations furnished therein were all subject to the rules and regulations promulgated by Vanderbilt University, the national Sorority,

and the student Pan Hellenic Council at Vanderbilt University. The active members who lived in the house and those in dormitories provided by the University were all subject to the same rules and regulations regarding social, athletic and scholastic activities.

7. That all meals prepared and served at the Sorority House were provided on a cooperative basis, which was based solely on the cost of service. Room rent was paid only by those members of the Sorority who lived in the house as a regular place of residence during the school year.

8. That in December 1962, the Sorority sold its property to Vanderbilt University by deed of record in Book 3464, page 571, Register's Office for Davidson County, Tennessee, but the Sorority reserved the right to use the said premises for the same purposes until October 1963.

9. In October 1963, the active chapter of the Sorority was temporarily relocated in premises owned by Vanderbilt University on Garland Avenue, in Nashville, Tennessee, where the active chapter is presently located. However, upon completion of a new building at the site of the former house, the active chapter plans to move into and occupy such new quarters on a permanent basis under a long-term lease from Vanderbilt University.

10. That since its beginning at Vanderbilt University to the present time, the complainant corporation has operated as follows:

(a) New members of the Sorority are invited to join on the basis of their moral character, scholastic ability and outstanding personal qualifications. The active

chapter is composed entirely of undergraduate students at the University and alumnae members and those who are no longer students. The alumnae members of the Sorority assist and advise members of the active chapter through a duly elected Chapter Advisor whose duty it is to cooperate with and aid the active members in achieving moral, scholastic and cultural improvement of the active members. The Chapter Advisor often attends the regular weekly meeting of the active chapter in the achievement of its goals.

(b) Upperclass members of the chapter, in keeping with the purposes of the Sorority, frequently advise and tutor the younger members in their scholastic endeavors. The social rules promulgated by both the University and the Sorority, expressly forbid gambling, drinking of alcoholic beverages and all other improper conduct upon the premises of the Sorority.

11. That the officials of Vanderbilt University, through all the years the Sorority has been in existence at the University, from time to time, has promulgated rules and regulations regarding the use of complainant's property and the conduct of its members, including rules respect closing hours, all social events, annual financial statements, weekly meetings and scholastic requirements for initiation into the Sorority. Exhibit No. 3 is an authentic copy of the Co-Ed Handbook for the year 1960-1961, and contains the rules regulating activities of women students (see pp. 32-40 for rules relating specifically to Sorority houses), and such rules are typical of the rules in force throughout the years 1959 to 1962, inclusive, when the taxes herein involved were assessed.

12. That Exhibit No. 6 to the Original Bill is a true and correct copy of 'Policy and Regulations for Social Events' promulgated on behalf of and with authority from Vanderbilt University, dated September, 1961, and containing regulations governing all students, which were complied with by complainant and its members.

13. Exhibit No. 7 to the Original Bill contains authentic copies of 'Sorority Regulations' passed by the Panhellenic Council and approved by the Dean of Women of Vanderbilt University for the years 1958-1959 and 1963-1964 and for such years governed sorority houses.

14. Complainant has no stockholders, and no part of the rent paid by the active members for the use of the rooms in the house or for meals served therein or any part of the dues paid by members has ever been used for the private benefit of any person whomsoever. Complainant has never used any part of its premises or engaged in any secular business of any type, and no athletic activities were conducted on said premises.

15. That property taxes were assessed against complainant's property for the years 1959 through 1962, which with penalties for delayed payment of the assessments by both the City of Nashville and the County of Davidson, amount to $2,803.10, and which, under the law, became the property of the defendant.

16. That on or about January 23, 1964, in accordance with the provisions of Tennessee Code Annotated 67-2313, complainant paid said taxes and penalties, amounting to $2,803.10, into the office of the Metropolitan Government of Nashville and Davidson County, Tennessee, and such payment, under protest, is evi-

denced by an official receipt acknowledging payment of said taxes, under protest, which is made Exhibit 9 to the bill of complaint.'' Tr. pp. 27-31

■ Since, insofar as the subject matter of this suit is concerned, Article 2, Section 28 of the Constitution of Tennessee is not self-executing and merely authorizes the General Assembly to exempt certain property, we have to deal only with our exemption statutes. Those relevant to this inquiry are T.C.A. 67-501 and T.C.A. 67-502(2) which in pertinent part provide:

''67-501. *Property subject to tax generally.*—All property—real, personal and mixed—shall be assessed for taxation for state, county and municipal purposes, except such as is declared exempt in this chapter, or unless otherwise provided.''

''67-502. *Exemptions generally.*—The property herein enumerated shall be exempt from taxation:

(1) All property of the United States, all property of the state of Tennessee, of any county, or of any incorporated city, town, or taxing district in the state that is used exclusively for public county or municipal purposes.

(2) The real estate owned by any religious, charitable, scientific or educational institution occupied by such institution or its officers exclusively for carrying out thereupon one (1) or more of the purposes for which said institution was created or exists, and the personal property of any such institution used exclusively for one (1) or more of the purposes for which such institution was created or exists.''

In the latest case involving the application of 67-502 (2), the Supreme Court had the following to say about exemptions:

"It is a fundamental rule that all property shall be taxed and bear its just share of the cost of government, and no property shall escape this common burden, unless it has been duly exempted by organic or statute law; and that one claiming such exemption has the burden of showing his right to it. 2 Cooley on Taxation (4th Ed.) sec. 672; 51 Am.Jur., Taxation, sec. 524; American Bemberg Corp. v. Elizabethton, 180 Tenn. 373, 378, 175 S.W.2d 535; American Nat. B. & T. Co. of Chattta. v. McFarland, 209 Tenn. 263, 352 S.W.2d 441, 443, 444.

'Taxes are the life blood of civil government. The right of taxation is an attribute of sovereignty. It is inherent in the state, and essential to the perpetuity of its institutions; consequently he who claims exemption must justify his claim by the clearest grant of organic or statute law.' Knoxville & O. R. Co. v. Harris, 99 Tenn. 684, 693, 43 S.W. 115, 53 L.R.A. 921.

'It is the policy of the state, and but justice between its citizens, that all property shall be taxed, and that no property shall escape this common burden, unless it comes fairly within the exemption; and it is incumbent on the plaintiff [claiming exemption for its property] to show that it comes within the exempting clauses of the constitution and statute.' (M.E. Church, South v. Hinton (1892), 92 Tenn. 188, 21 S.W. 321, 19 L.R.A. 289). State ex rel. v. Waggoner, 162 Tenn. 172, 176, 35 S.W.2d 389.

Our Constitution (1870) provides (Art. 2, sec. 28) that 'all property' shall be taxed, but 'the Legislature

may except' such as may be held by the State, etc., and 'such as may be held *and used for purposes purely* religious, charitable, scientific, literary, or educational.' Thus, this provision of our Constitution does not grant any tax exemption, does not establish any public policy of exemption, but merely authorizes, permits, the Legislature to grant exemption in the cases specified." Nashville v. Board of Equalization, 210 Tenn. 587, 594-596, 360 S.W.2d 458, 461-462.

█ And then, after reviewing our cases down to the enactment of Chapter 47, Public Acts of 1935, our present exemption law, codified T.C.A. sec. 67-501 et seq., the Court expressly discarded the rule exemplified by such cases as State v. Fisk University, 87 Tenn. 233, 10 S.W. 284; M.E. Church, South v. Hinton, 92 Tenn. 188, 21 S.W. 321, 19 L.R.A. 289; Cumberland Lodge No. 8 v. Nashville, 127 Tenn. 248, 154 S.W. 1141, in which it had been held that strictness of construction of exemption statutes would not be indulged where the exemption is to a religious, scientific, literary, or educational institution, and proceeded to construe and apply the exemption statute to the religious institution involved in that suit under the rule applicable generally to exemptions from taxation; which is that exemptions will only be allowed when granted in clear and unmistakable terms, and will be granted exactly according to those terms. With respect to this the Supreme Court said:

"The Court further said that in 1935, 'obviously in response to a growing public sentiment against abuse of our exemptions of educational and charitable institutions, the Legislature enacted Chapter 47, Pub.Acts of 1935, *re-defining, limiting,* and *restricting* the exemp-

tion * * *' ([Baptist Memorial Hospital v. Couillens] 176 Tenn. 300, 311, 140 S.W.2d 1088, 1092).

As above stated, our 1907 exemption act (1932 Code sec. 1085(2) was *expressly repealed* by the Act of 1935 (ch. 47, sec. 1, p. 131), by striking out its language and substituting *new* and *different* language. This 1935 Act still stands as our statute law, since it was re-enacted, without change, in 1950 Code Supp. (sec. 1085(2) and again as T.C.A. sec. 67-502(2).

So, in view of the change in our public policy above noted, and in view of the fact that our former exemption acts have been displaced by the 1935 Act (T.C.A. sec. 67-502(2)), '*redefining, limiting* and *restricting* the exemption,' we think our earlier cases under those former acts do not control in interpreting this Act, but it is to be interpreted upon its own words, construed in the light of our public policy.'' 210 Tenn. 602, 360 S.W.2d 464-465.

It seems clear that when T.C.A. sec. 67-502(2) is applied exactly as written, it does not exempt appellee's property from taxation. The first requirement of the exemption statute is that the real estate be owned by a religious, charitable, scientific, literary or educational institution. Since, as appellee concedes, it is not an educational institution (the only category of institutions under whose exemption it seeks shelter) the exemption statute simply does not apply to it.

Secondly, the statute requires not only that the real estate be owned by an educational institution, but that it be ''occupied by such institution or its officers exclusively for carrying out thereupon one (1) or more of the purposes for which said institution was created or exists,

* * *." Of course, since appellee is not an educational institution it cannot and does not occupy the property for carrying out "the purposes for which said institution was created or exists,".

In this connection, we must point out that although this case seems to have proceeded to this point on the assumption appellee is a general welfare corporation, we are unable to agree that this is the case as, so far as is reflected by the record before us, appellee was imperfectly chartered in the first place, its charter being so contrary to the statutes authorizing the creation of welfare corporations, that it is not a general welfare corporation at all.

█ General welfare corporations are provided for by Title 48, Chapter 11, of T.C.A. in sections 48-1101 et seq. Section 48-1101 provides that charters may be granted for the general welfare of society with respect to certain specified publicly beneficial activities as set out therein in twelve different categories.

Section 48-1102 provides for the form of charter for general welfare corporations and commands that the charter of incorporation shall embody, verbatim, the proper one or more of the twelve categories as paragraphed in Section 48-1101, within the purview of which the objects of the corporation come.

Examination of the photostatic copy of the charter of incorporation in the record discloses that this was not done. Not only was this not done, but the charter of incorporation contains no statement whatsoever with respect to the general welfare purpose for which it was purportedly seeking a charter.

When these omissions, whether intentional or inadvertent, are considered in the light of the other provisions of Title 48, Chapter 11, the conclusion is inescapable that appellee's purported general welfare charter is void, and that it is not such a corporation at all. (See State ex rel. v. Southern Publishing Association (1935), 169 Tenn. 257, 84 S.W.2d 580, 100 A.L.R. 576).

█ And, while it is settled that a private, profit corporation may be entitled to a tax exemption under 67-502, the same as a general welfare corporation (Ward Seminary for Young Ladies v. Mayor and City Council of Nashville (1913), 129 Tenn. 412, 167 S.W. 113), this was only because the corporation there involved had been incorporated for the express purpose of operating as an educational institution, and was so operating.

█ But that is not the case we have here. Here we have a case where a group of people with a void general welfare charter, which does not purport to dedicate or obligate the property they might acquire to any particular purpose, who claim their property was exempted from taxation by a statute which exempts property *owned* by an educational institution and occupied by it for educational purposes, simply, because students attending an exempt educational institution, who are subject to its rules, prefer to reside on the property. We think this is stretching the blanket too far even under the old rule of generous attitude toward exemption. And, it is certainly stretching it too far under the new rule placed in effect by Nashville v. Board of Equalization.

But, before we conclude, permit us to bolster the conclusion we have reached by pointing out that the property in question was never under the control of Vanderbilt University. There was no relationship between the appel-

lee and Vanderbilt which permitted Vanderbilt to exercise any control whatsoever over the property. All it could do was to make rules and regulations governing its students under particular circumstances and conditions, and the fact that these rules and regulations took into account that some of its students belonged to sororities and might prefer to stay in sorority houses rather than in its dormitories was certainly no such occupancy or possession or control of the property by Vanderbilt as would be requisite for its exemption under the statute.

In sum, in order to sustain the exemption we would be required to go even further than the old cases, ignoring Nashville v. Board of Equalization, and this we cannot do.

In reaching this decision we have read and considered City of Memphis v. Alpha Beta Association, 174 Tenn. 440, 126 S.W.2d 323. It is not applicable as it involved the exemption provided for by the 1907 exemption act, which was expressly repealed by the Act of 1935. Moreover, the property owner there involved was a general welfare educational institution occupying and using its property, as the Court said, for one of the educational purposes for which it had been chartered. And, the case is further distinguished from the present one in that the Court found and held that, while formal instruction in classes was not carried on on the property, a system of instruction did exist which brought the property within the exemption. The question whether the property would be exempt because students occupied it under the same rules and regulations under which they might occupy the school dormitories, and under special rules applicable to fraternity and sorority houses, was not considered or passed on.

For the reasons mentioned we think the Chancellor erred in holding the property exempt from taxation and in decreeing a recovery. So, the decree of the lower court is set aside and appellee's bill is dismissed with costs.

Shriver and Puryear, JJ., concur.