[Civ. No. 36407. Second Dist., Div. Four. Oct. 15, 1971.]

THE PEOPLE ex rel. HARRY GROMAN et al., Plaintiffs and Appellants, v.
SINAI TEMPLE, Defendant and Respondent.

## COUNSEL

Thomas C. Lynch, Eveile J. Younger, Attorneys General, Eric Collins, Deputy Attorney General, Klinger & Leevan, Tobias G. Klinger, George Goodstein, Simon, Sheridan, Murphy, Thornton & Medvene, Edward M. Medvene and Robert E. Hinerfeld for Plaintiffs and Appellants.

Harold Easton, Kaplan, Livingston, Goodwin, Berkowitz & Selvin and Herman F. Selvin for Defendant and Respondent.

## OPINION

**FILES, P. J.**—This proceeding in quo warranto was brought by the Attorney General upon the complaint of certain private persons to determine whether the defendant corporation is unlawfully exercising its corporate franchise.[1] Defendant is incorporated as a nonprofit corporation for religious and cemetery purposes. (Corp. Code, § 9200.) The substance of the complaint is that defendant is operating its cemetery as a profit-making business, competing in the market with other cemeteries and making a profit which is currently being used to pay off the purchase price of its cemetery property.

A demurrer to the complaint was sustained with leave to amend. Plaintiff then filed an amended complaint to which the court sustained a general demurrer without leave, and dismissed the action. Plaintiff is appealing from the judgment.

---

[1] Code of Civil Procedure section 803: "An action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise, or against any corporation, either de jure or de facto, which usurps, intrudes into, or unlawfully holds or exercises any franchise, within this state. And the attorney-general must bring the action, whenever he has reason to believe that any such office or franchise has been usurped, intruded into, or unlawfully held or exercised by any person, or when he is directed to do so by the governor."

The issue presented here has not previously been considered by the appellate courts of this state.

### Activities of Defendant Corporation

The history and conduct of defendant will be stated as set forth in the first amended complaint and the exhibits attached thereto.

Defendant was organized in 1908 "as a religious corporation, and not for the object of any pecuniary profit," for the purpose of establishing and maintaining a congregation "in conformity to the doctrines, government, discipline and worship of the Jewish religion of a conservative form."

In 1961 the articles of incorporation were amended by adding new articles EIGHTH and NINTH, which included this language:

"EIGHTH: This corporation does not contemplate pecuniary gain or profit to the members thereof nor shall any earnings, income, gains, profits, funds or property of this corporation in whatsoever manner acquired by it, at any time inure or be distributed for the benefit of any private member, Director, or other individual, but the same shall be devoted solely for the purposes for which this corporation is formed as the same are hereinbefore declared and set forth."

"NINTH: Upon any dissolution . . . the assets not held on any trust shall be transferred by the trustees or persons in charge of the liquidations, in trust, or otherwise, to other non-profit corporations, organizations, associations, funds or foundations in California, organized and operated exclusively for religious, charitable, literary and/or educational purposes similar to those of this corporation."

On June 3, 1964, article SECOND, which stated the purposes of the corporation, was amended by addition of this language: "To own and operate cemeteries for the burial of the remains of persons of the Jewish faith, their spouses and families; and to do all things necessary, convenient or incidental to the care and preparation for burial and/or to the burial of the remains of such persons."

An identical amendment was adopted and filed on February 10, 1965.

On August 20, 1963, defendant entered into a contract with Forest Lawn Company and Forest Lawn Cemetery Association (hereinafter collectively Forest Lawn) for the purchase of the cemetery and mortuary business and property which had been operated by Forest Lawn under the names Mount Sinai Mortuary and Mount Sinai Memorial Park. The sale included about 82 acres of cemetery property and undeveloped land located in the Hollywood hills, and a fully equipped mortuary situated on

the premises, together with the improvements, furnishings and equipment. Defendant also acquired the customer lists, business names, goodwill, and other intangible property. Forest Lawn agreed not to compete with defendant in the exclusively Jewish cemetery and mortuary business.

The total consideration for the contract was $9,750,000, of which defendant paid $200,000 cash at close of escrow and agreed to pay the balance in installments over a period of 14 to 20 years at a rate which was based in part upon the "net cash flow" from operations. The unpaid balance was secured by a trust deed and chattel mortgage.

Continuously since March 2, 1964, defendant has been operating that business. The capacity of the cemetery and mortuary are far greater than the needs of defendant's members, and the financial obligations under the Forest Lawn contract are greatly in excess of what could be realized by serving defendant's members only. By advertising and through sales personnel defendant has solicited the Jewish community in competition with other cemeteries and mortuaries, and without regard to membership in defendant's congregation. The business has grown, and, in the year 1968 defendant's mortuary conducted in excess of 20 percent of all the funerals conducted by Jewish funeral directors in Los Angeles County. Substantial profits have been earned and applied towards reduction of the indebtedness under the Forest Lawn contract.

### The Applicable Law

Preliminarily, to focus attention upon the true issue it is necessary to make two observations:

First, we deal with a corporation whose articles of incorporation forbid the distribution of gains to any individual under any circumstances. Article NINTH requires that upon dissolution the remaining assets shall be transferred to other nonprofit corporations in California "organized and operated exclusively for religious, charitable, literary and/or educational purposes similar to those of this corporation."

Second, we do not deal with any question of taxation. The question is solely one of corporate power. Decisions of the courts construing tax statutes are not determinative on this issue. Taxation is governed by different statutes, different purposes and policies.

Plaintiff's main contention is simply that a corporation organized in nonprofit form may not engage in commercial, competitive, profit-making business as one of its main intended activities. We are of the opinion that the activities of defendant, as set forth in the complaint, are not in excess of the powers authorized by Corporations Code section 9200, and

that the history of the nonprofit corporation statutes confirms this interpretation of the present statute.

Corporations Code section 9200, as amended in 1949, reads as follows: "A nonprofit corporation may be formed by three or more persons for any lawful purposes which do not contemplate the distribution of gains, profits, or dividends to the members thereof and for which individuals lawfully may associate themselves, such as religious, charitable, social, educational, or cemetery purposes, or for rendering services, subject to laws and regulations applicable to particular classes of nonprofit corporations or lines of activity. Carrying on business at a profit as an incident to the main purposes of the corporation and the distribution of assets to members on dissolution are not forbidden to nonprofit corporations, but no corporation formed or existing under this part shall distribute any gains, profits, or dividends to any of its members as such except upon dissolution or winding up."

The defendant's purposes—religious and cemetery—are expressly recognized in the statute as lawful purposes. The statute does not expressly prohibit the earning or accumulation of profits by the corporation. Instead, the statute requires that the purposes "do not contemplate the distribution of gains, profits, or dividends to the members." The use of the word "distribution" indicates that the accrual of gains is not thereby prohibited. That inference is buttressed by contrasting the present statute with the language of earlier enactments.

The original Civil Code of 1872, in section 593, authorized persons to incorporate themselves "for religious, social, benevolent, or other purpose included in the subdivisions of Section 286, where pecuniary profit is not their object. . . ."

Section 595 of the same code placed limitations upon the amount of land such a corporation might hold; section 608 limited cemetery corporations to land not exceeding 320 acres; and section 610 placed a limit upon the holding of personal property.

The language of section 593 was amended from time to time, but prior to 1931 the phrase "where pecuniary profit is not their object" or "for purposes other than pecuniary profit" remained the statutory standard.

In 1931 section 593 was recast.[2] In place of the phrase "for purposes

---

[2]Civil Code section 593 as amended in 1931: "A nonprofit corporation may be formed by any number of persons, not less than three, for any lawful purposes such as religious, charitable, social, educational, recreational, cemetery or for rendering services, which do not contemplate the distribution of gains, profits or dividends to the

other than pecuniary profit" the new statute specified "for any lawful purposes . . . which do not contemplate the distribution of gains."

The 1931 Legislature also repealed the language of former sections 595, 608 and 610 which had imposed limitations upon the amount of property a corporation might hold. (Stats. 1931, ch. 871, p. 1847, § 1, and ch. 1148, p. 2451, § 32.)

When the Corporations Code was adopted in 1947, Civil Code section 593, as revised in 1931, became Corporations Code section 9200 without substantial change. The only change since has been the 1949 addition of another clause at the end of the last sentence.

The introduction of the word "distribution" in the 1931 statute, in place of the phrase formerly used, is a clear indication that the Legislature was concerned not with gains or profits as such, but with their distribution to members. The 1931 language, and its continued use in section 9200, cannot be reconciled with plaintiff's theory that the planned accumulation of profits is necessarily improper.

### Other Contentions of Plaintiff

■ Plaintiff argues that the last sentence of Corporations Code section 9200 implies that the corporations therein referred to may not seek profits from their main-purpose activities. That sentence reads: "Carrying on business at a profit as an incident to the main purposes of the corporation and the distribution of assets to members on dissolution are not forbidden to nonprofit corporations, but no corporation formed or existing under this part shall distribute any gains, profits, or dividends to any of its members as such except upon dissolution or winding up."

The argument is that this sentence, explicitly authorizing "business at a profit as an incident," would be meaningless unless business at a profit for the main purpose was forbidden. We do not believe that language was intended to carry that implication. The sentence gives recognition that corporations formed under section 9200 which do not ordinarily make profits (e.g., religious, social, charitable or educational corporations) may lawfully carry on incidental businesses which do.[3] The sentence re-

members thereof, and for which individuals lawfully may associate themselves, subject to laws and regulations applicable to particular classes of nonprofit corporations or lines of activity. The carrying on of business at a profit incidental to the main purposes of the corporation and the distribution of assets to members on dissolution shall not be deemed forbidden to nonprofit corporations." (Stats. 1931, ch. 871, p. 1847, § 1.)

[3]For some examples of incidental profit-making businesses conducted by nonprofit charitable corporations, see *Cedars of Lebanon Hosp.* v. *County of L.A.* (1950) *35 Cal.2d* 729, 745 [221 P.2d 31, 15 A.L.R.2d 1045] (thrift shop in a hospital), and

lates only to incidental business and to the distribution of assets and gains to members on dissolution. Neither subject matter is applicable in this case, which deals only with business conducted as a main purpose by a corporation which will not distribute any gains or assets to members.

■ Plaintiff argues that even if the cemetery business is lawful, the operation of the mortuary is not within the scope of section 9200. The case law of this state now appears to make that argument untenable.

In *Wing* v. *Forest Lawn Cemetery Assn.* (1940) 15 Cal.2d 472 [101 P.2d 1099, 130 A.L.R. 120] one of the issues was whether a mortuary in a cemetery was inconsistent with former Civil Code section 608, which required that the land owned by a cemetery corporation "be held and occupied exclusively as a cemetery for the burial of the dead." The court held there was no violation because the operation of the mortuary was an "incident of burial."

*Sunset View Cemetery Assn.* v. *Kraintz* (1961) 196 Cal.App.2d 115 [16 Cal.Rptr. 317] was a proceeding to compel the issuance of a permit for the construction of a mortuary within a cemetery. The permit had been refused upon the ground that the cemetery ordinance of the county did not authorize a mortuary on property dedicated for cemetery purposes. In affirming a judgment for plaintiff, the appellate court followed the reasoning of the *Wing* case and held (at p. 120) that in using the term "cemetery" in the ordinance the county "may be presumed to have intended a parallel inclusion," i.e., that "cemetery" included a mortuary.

In 1959 the Attorney General expressed the same view in a formal opinion (33 Ops.Cal.Atty.Gen. 33, 35) which, after discussing the *Wing* decision and Health and Safety Code section 7020, stated: "The above authorities point out that it is now well settled that the operation of a mortuary upon the cemetery premises by the cemetery authority is incidental to and included within cemetery businesses or purposes."

We regard the foregoing as adequate authority for holding that the operation of defendant's mortuary is a lawful exercise of its cemetery powers under Corporations Code section 9200.

■ In its amended complaint plaintiff included allegations not found in the original complaint to the effect that defendant does contemplate the distribution of gains, profits and dividends to its members in that (a) it

*Y.M.C.A.* v. *County of L.A.* (1950) 35 Cal.2d 760, 772 [221 P.2d 47] (restaurant, barbershop, valet shop and gym store in Y.M.C.A.). Those cases deal with whether the buildings so used were exempt from property taxation, but the power of the nonprofit corporations to carry on these activities was not questioned.

affords its members a discount on the price of cemetery land, which discount is not given to nonmember customers, and (b) to the extent that cemetery profits are used for religious purposes, such use constitutes a distribution to members.[4]

In interpreting the statute it is necessary to distinguish between the inurement of benefits and the distribution of profits. (See *Union League Club* v. *Johnson* (1941) 18 Cal.2d 275, 278 [115 P.2d 425]; *La Societe Francaise* v. *Cal. Emp. Com.* (1943) 56 Cal.App.2d 534, 540-543 [133 P.2d 47].)

Many corporations organized under section 9200, and particularly religious corporations, benefit their members, even though the corporations are strictly nonprofit in nature. It is common knowledge that such corporations often receive endowments, bequests and substantial gifts from members and interested nonmembers which make it possible for the organization to provide benefits costing more than the recipients pay by way of dues or contributions. We do not understand plaintiff to argue that a corporation organized under section 9200 may not lawfully benefit its members except upon a strict quid pro quo basis. The furnishing of benefits to members, without charge or without receiving full cash value in return, is not per se the payment of a dividend, gain or profit by a corporation organized under section 9200.

The substance of the allegations referred to is simply that defendant now renders and will in the future render cemetery and religious benefits to its members. That is not, by itself, a misuse of corporate power. The allegation of a discount, without more, means little. The plaintiff does no more than assert an erroneous legal conclusion in characterizing such conduct as a distribution of gains, profits or dividends.

There is in this pleading no allegation of any facts which would even suggest that defendant is furnishing or will furnish services of a kind and in

---

[4]The full text of these allegations is:

"(a) Defendant affords to its members a discount on the price of cemetery land which is not given by defendant to defendant's nonmember customers.

"(b) Defendant's purchase agreement described in Exhibit '2' hereinabove contemplates withdrawal by defendant from the net cash flow derived from its cemetery and mortuary operations the sum of $25,000.00 per year plus 50% of defendant's share of the net cash flow in excess of $25,000.00 per year. Plaintiff and relators are not informed at the date hereof of defendant's use or contemplated use of such contractually permitted withdrawal of such gains and profits, but to the extent such gains and profits derived from the ownership and operation of the aforesaid cemetery and mortuary business are or will be used not only to purchase that business but to reduce the regular dues, fees, assessments, and contributions otherwise necessary on the part of members of defendant's congregation to fund the customary operational expense of the synagogue plant and its staff, or to fund new buildings or expansion of such synagogue plant, such use constitutes a distribution by defendant of gains, profits, dividends, or assets to its members other than upon dissolution or winding up."

a manner and amount which could be characterized as a concealed dividend.

Finally we take notice of plaintiff's reliance upon *State* v. *Southern Publishing Assn.* (1935) 169 Tenn. 257 [84 S.W.2d 580, 100 A.L.R. 576], which held that a nonprofit corporation, organized under Tennessee law for religious purposes, could not lawfully operate a general commercial printing and publishing business. The opinion pointed out that the business conducted was not within one of the 11 paragraphs of the code which enumerated the lawful objects of a nonprofit corporation, nor was the business incidental to the prosecution of such objectives.

That reasoning does not fit the facts of this case. Here the profits accrue from the pursuit of defendant's cemetery purpose, which purpose is expressly authorized by the governing statute and by defendant's articles of incorporation.

The judgment is affirmed.

Jefferson, J., and Dunn, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 9, 1971. Wright, C. J., and Mosk, J., were of the opinion that the petition should be granted.