The INDIANA UNIVERSITY FOUNDATION, Petitioner,

v.

STATE BOARD OF TAX COMMIS-SIONERS, and Leo A. Lippman, Respondent.

Cause No. 49T05–8708–TA–00036.

Tax Court of Indiana.

Aug. 31, 1988.

Donald F. Foley, Donald F. Foley & Associates, Indianapolis, for petitioner.

Linley E. Pearson, Atty. Gen. by Joel Schiff, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

The petitioner, Indiana University Foundation, appeals the final determination of the respondent, State Board of Tax Commissioners, which denied the Foundation's application for a 100% exemption of real property under IC 6–1.1–10–16. The Foundation and the State Board have filed cross

motions for summary judgment on the question of whether the Foundation, as a 31% owner, is entitled to a 100% exemption for real property under IC 6–1.1–10–16.

The parties have stipulated the following facts. The Foundation was a not-for-profit corporation formed for the purpose of supporting Indiana University. It owned a 31% interest in Shoreland Towers, an apartment building used to house students, faculty, and staff of Indiana University. The 31% interest was deeded to it by Leo Lippman. The remaining 69% interest was owned by Lippman. On September 30, 1983, the Foundation and Lippman entered into a management agreement, under which the Foundation was to lease and manage Shoreland Towers, pay all operating and maintenance expenses, and assume liability for any real and personal property tax assessments, as well as the mortgage payments on the property. The management agreement was for a period of 10 years, at the end of which the 69% interest was to be delivered up to Lippman.

Since the inception of the agreement, the Foundation has leased apartments only to university students, staff, and faculty, although it honored commitments made by Lippman prior to September 30, 1983. All receipts from rentals have been used by the Foundation for the above obligations as well as to maintain, remodel, and improve Shoreland Towers. Lippman has neither received nor been entitled to any income derived from the operation of Shoreland Towers since October 1, 1983.

The Foundation applied for exemption of 100% of real property for the 1984 tax year. The exemption claim was denied. After a hearing, the State Board determined that Shoreland Towers was used and occupied by university students, faculty, and staff. Since only 31% of the real property was actually owned by the Foundation, the State Board allowed a 31% exemption. This appeal followed.

The issues are restated as follows:

1) Does the Foundation waive its right to claim a 100% exemption because it failed to file an executed power of attorney;

2) Does the Foundation own the property for the purposes of IC 6–1.1–10–16;

3) Does the legislature exceed its authority under article X, section 1 of the Indiana Constitution, by requiring ownership as well as use under IC 6–1.1–10–16; and

4) Does public policy require that the Foundation receive a 100% exemption.

■ The State Board raises the question of whether the Foundation has waived its right to claim Lippman's exemption because it failed to file an executed power of attorney. IC 6–1.1–11–3(b) provides that "[t]he authority for signing an exemption application may not be delegated by the owner of the property to any other person except by an executed power of attorney." IC 6–1.1–11–1 provides that "[i]f the owner does not comply with the statutory procedures for obtaining an exemption, he waives the exemption."

This issue was raised for the first time on appeal to this court. For whatever reasons, the State Board and its hearing officer made no mention of waiver during the administrative proceedings. The parties stipulated that the Foundation did not execute a power of attorney separate from the management agreement. The management agreement clearly provided that the Foundation had authority to deal with any matter relating to real and personal property taxes. While the Foundation did not indicate that it had power of attorney to act for Lippman when the exemption application was filed, the management agreement was introduced in evidence at the State Board's hearing so that the State Board had knowledge that the Foundation had authority to act in Lippman's stead.

Furthermore, the Foundation claims a 100% exemption based on its exclusive use and occupancy of the property for educational purposes. It does not claim that Lippman is personally entitled to any part of the exemption. The Foundation has not waived its right to claim the exemption.

■ The Foundation argues that it meets the requirement of ownership under IC 6–1.1–10–16, which exempts real and personal property from taxation "if it is

owned, occupied, and used by a person for educational ... purposes." IC 6–1.1–1–9(b) defines "owner" as the holder of "legal title in fee to real property."

The Foundation contends that it is the owner of Shoreland Towers because, under the management agreement, Lippman has only the indicia of ownership. The Foundation paid the debts and assumed other liabilities. Lippman, who could make no other use of the property other than as provided in the management agreement, could not effectively transfer his interest to a third party for a different use. He had no control of the property.

Lippman had rights, however, under the management agreement, especially the right to have the 69% of the property returned in 1993. At best, the Foundation has an equitable interest in the 69% interest that terminates in 1993. This does not raise to the status of ownership for the purposes of IC 6–1.1–10–16.

This court has already decided that ownership requires legal title for the purpose of IC 6–1.1–10–16. In *Community Christian Church, Inc. v. State Board of Tax Commissioners* (1988), Ind. Tax, 523 N.E. 2d 462, this court held that a church that purchased property pursuant to a land sale contract did not qualify for exemption under IC 6–1.1–10–16, because although it had equitable title, it did not "own" the property. The Foundation attempts to distinguish *Community Christian Church* on the grounds that it holds legal title in fee. Nevertheless it owns only 31% of the fee, for which it has been granted an exemption of 31% of the total assessed value.

■ The Foundation also argues that in several cases interpreting the exemption statute, the focus was on use as the criterion for exemption. This is true, but ownership was not an issue in those cases. In each case, the taxpayer owned the land in question.

The Foundation argues, in the alternative, that ownership is not required under the Indiana Constitution. Because the Indiana Constitution specifies use as the only criterion for exemption, the Foundation contends that the legislature has exceeded its authority by requiring concurrent ownership and use under IC 6–1.1–10–16.

Article X, section 1 of the Indiana Constitution provides in pertinent part:

The General Assembly may exempt from property taxation any property in any of the following classes:

(1) Property being used for municipal, educational, literary, scientific, religious or charitable purposes....

■ The State possesses the power to tax as an attribute of its sovereignty, independent of the constitution. *Dunn v. City of Indianapolis* (1935), 208 Ind. 630, 196 N.E. 528; 27 I.L.E. *Taxation* § 12 (1960). The state exercises its power to tax through the legislature. *Board of Comm'rs of Wells County v. Falk* (1943), 221 Ind. 376, 47 N.E.2d 320; 27 I.L.E. *Taxation* § 13 (1960). The legislature's power to tax is restricted generally by the Federal Constitution and specifically by the equality and uniformity requirement of article X, section 1 of the Indiana Constitution. 27 I.L.E. *Taxation* § 15 (1960).

■ Inherent in the power to tax is the power to exempt, subject to constitutional restrictions. 71 AM.JUR.2D *State & Local Taxation* § 309 (1973). Article X, section 1 of the Indiana Constitution operates as a limitation on the legislature's power to grant exemptions insofar as it may exempt only those kinds of property enumerated therein. *Wright v. Steers* (1962), 242 Ind. 582, 179 N.E.2d 721; 27 I.L.E. *Taxation* § 51 (1960).

The legislature must enact legislation in order for property to be exempt from property taxation. Article X, section 1 is not self-executing, as the language used therein is permissive rather than mandatory. *See Stark v. Kreyling* (1934), 207 Ind. 128, 188 N.E. 680; 27 I.L.E. *Taxation* § 51 (1960). Implicit in the permissive language of this provision is the legislature's authority to restrict the availability of exemptions for the enumerated classes of property. Thus, the legislature's requirement of concurrent ownership, use, and occupancy is well within its discretion. *See, e.g., City of*

*Atlanta v. Spence* (1979), 242 Ga. 194, 249 S.E.2d 554, 556; *First Nat'l Bank of Denver v. Board of County Comm'rs* (1975), 189 Colo. 128, 538 P.2d 427, 428; *North Shore Post No. 21 of the American Legion v. Korzen* (1967), 38 Ill.2d 231, 230 N.E.2d 833; *Metropolitan Gov't of Nashville & Davidson County v. Nashville Pi Beta Phi House Corp.* (1966), 56 Tenn.App. 330, 407 S.W.2d 179. While the Foundation may satisfy the use and occupancy prongs of the test under IC 6–1.1–10–16, it does not satisfy the ownership requirement.

The Foundation also contends that public policy favors granting the exemption because denying it will have a chilling effect on gifts to educational institutions. The holding herein has no effect on such gifts. Most such gifts are made for income tax or death tax reasons, not property tax reasons. Sixty-nine percent of the property was not given to the Foundation; only the right to income and use for 10 years was donated. If ownership is to be removed from the requirements of IC 6–1.1–10–16, it is up to the General Assembly to remove it.

The State Board's decision to award only a 31% exemption to the Foundation is not contrary to law. Accordingly, the Foundation's motion for summary judgment is denied and the State Board's motion for summary judgment is granted. The Foundation shall take nothing by its petition.